Charles Bell, as Committee, etc., of Morgan Smith, a Lunatic, Appellant, *v.* Eberle E. Smith and Another, Respondents.

*Agreement between a father and son — when presumed to be invalid — when a man is competent to do business.*

In an action brought to set aside an agreement made between a father, eighty-one years of age, and his son, by which the father satisfied a mortgage given by his son to him, and the son agreed to board, lodge and clothe the father and his wife during their joint lives, the presumption is, by reason of the relation between the parties, that the bargain is not valid, and the burden of proof rests upon the son to overcome such presumption. If, however, it be shown that the father thoroughly understood the bargain made with his son, and that it was a reasonable bargain to make and inured to his advantage, the agreement will be upheld.

A man of the age of eighty-one years, although not retaining his faculties to their full extent, is perfectly competent to do business if he has a clear appreciation of the particular business in which he is engaged, of the relation which it bears to his fortune, of the expediency or inexpediency of it, and is able to judge rationally as to the reasonableness of the particular transaction.

Appeal by the plaintiff, Charles Bell, as committee, etc., of Morgan Smith, a lunatic, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Yates on the 23d day of November, 1893, upon the decision of the court, rendered after a trial at the Yates County Equity Special Term, dismissing the plaintiff's complaint upon the merits, and for costs.

*M. A. Leary*, for the appellant.

*John Gillette*, for the respondents.

Present — DWIGHT, P. J., LEWIS and HAIGHT, JJ.; BRADLEY, J., not sitting.

Judgment appealed from affirmed, with costs, on the opinion of RUMSEY, J., at Special Term.

The opinion of the Special Term was as follows:
RUMSEY, J.:

This is one of those unfortunate litigations which not infrequently arise between children of very old people, who are anxious to divide the property without waiting for the death of their parents. The facts, which are entirely undisputed, are that Morgan Smith and his wife were the parents of one Josephine Pulver and of the defendant, Eberle E. Smith. Mr. Morgan Smith was about eighty-one years old, and his wife was some years older. For some time the two had been living at the house of Mrs. Pulver, and had received from her such care and attention as was satisfactory to them. Mr. Morgan Smith was the owner of about $5,400 of personal property, including the bond and mortgage in question, which, with interest, amounted, on the 9th day of June, 1892, to about $2,700. Shortly before the ninth of June there had been some sort of a settlement between Pulver and Morgan Smith, and Mr. Smith had learned that Pulver intended to charge him what he believed to be an exorbitant price for the board and lodging which he and his wife received, and he found that Pulver claimed that he (Smith) was then indebted to him in the sum of about $1,800 for board already had. It appeared that he was exceedingly dissatisfied with this condition of affairs. There is no doubt that at this time Pulver and Mrs. Pulver both supposed that he was perfectly competent to do business. He knew how much he had, and they evidently supposed that he was in a fit condition to settle their account and to pay them the sum of $1,800, or thereabouts, for the board which he had had up to that time. It is clear that he was then sufficiently able to do business to appreciate the fact that his fortune was not enough to enable him to pay for his board at the rate at which they then charged him, and to understand that common prudence required that he should make some other arrangement with regard to his support, lest the fortune which he had would not be sufficient to provide for him and his wife during their lives. At this time he went to

the house of his son Eberle, the defendant.   Eberle, it seems, was a well-to-do farmer, who lived upon the farm which Morgan Smith had occupied for many years.   Morgan Smith and his wife had some sort of a life estate in that farm, or in some portion of it. Eberle Smith and his wife had given to Morgan Smith a bond to secure the payment of $2,500, secured by a mortgage upon the farm on which he lived.   Upon this bond there was due something over one year's interest.   While Morgan Smith was at his son's house an agreement was made between them, by which Morgan Smith discharged and satisfied the bond and mortgage, and Eberle Smith and his wife agreed to give to Morgan Smith and his wife a home at their house, and to clothe and care for them during their lives, and, in case Morgan Smith and his wife desired to live elsewhere, to pay $300 a year during the life of Morgan Smith and $150 a year to Mrs. Smith, in case she survived her husband.   This action is brought to set aside and cancel this discharge, and the sole question is whether or not Morgan Smith, at the time he made this paper, was of sound mind and competent to make a contract of this kind, or whether he had become, by reason of his age, incompetent to make such a contract.

It may be premised that such a contract is not unusual.   Whatever may be thought of the expediency of such a contract generally it cannot be said to have been an inexpedient contract to make in this instance.   Eberle Smith was an only son.   He was, so far as appears, on the best possible terms with his father, and there is nothing to show that there had ever been any difficulty or unkindness between them.   Mr. Smith, his father, had, as he supposed, grave reason to be displeased with the conduct of Pulver towards him.   Of his whole fortune at that time almost $2,000 had already been absorbed by the charges which Pulver made, and which, it seems, he had not supposed would be so large.   These charges would reduce his estate from $5,400 to about $3,600, and it is quite clear that the interest on that $3,600 would not be sufficient to pay the bill which Pulver had advised him he intended to charge, being seven dollars a week for the board and lodging of the two. It was apparent that at this rate he would be obliged each year to break into his capital seriously, and that the small fortune which he possessed would soon be exhausted.   In that state of affairs it surely

cannot be said to be unreasonable that he desired to make some other arrangement for his support; and the arrangement which he did make, by which he provided for the maintenance of himself and his wife, including their clothing and all their expenses, at the house of his only son, at a cost of the interest on a $2,500 mortgage, was a very profitable bargain. It is noticeable that he procured by this bargain what Pulver had been charging him seven dollars a week for.

Was he then competent at this time to make this bargain? The question is not whether he was competent, on the twenty-third of August, to make this bargain, but whether he was competent to make it on the ninth of June. It may be conceded that because the relation of father and son existed between Morgan Smith and Eberle the presumption is that the bargain was not a valid one (*Boyd* v. *De La Montagnie*, 73 N. Y. 498), and that the defendant Eberle has the burden of the proof to overturn this presumption. As we have seen the transaction was not an unreasonable one in itself. The evidence shows that at the time it was made Morgan Smith consulted with his brother, a business man in whom he had great confidence. The brother says that at this time Morgan understood what property he had, and produced it and counted it, and it was figured up. He spoke of the debt to Pulver, from which it appears that he was perfectly cognizant of what was owing in that place. It appears that he talked over the terms of this contract with his brother, and advised the brother what he wanted put into it, and after the contract was written he read it over and appreciated the contents and said it was all right. It appears that he suggested the agreement himself, and gave as reasons that his expense at Pulver's was too much and that he wanted to secure a home while he had something to do it with. When the amount of money to be paid, in case he left Eberle's house, was spoken of he said he wanted it made large enough to secure to himself and his wife a home. He knew at that time that he had no debts, except the debt to Pulver, and he knew its amount. That testimony shows that, at the time he made this contract, he was in the full possession of his faculties, quite as much so as any man of his age could be expected to be. It appears, from the testimony of the defendant's witnesses, that while he was there at Eberle's and afterwards, even down to

the time when the inquisition which declared him insane was had, he was intelligent and bright, and there was no serious failure of his mental faculties. These persons tell of interviews with him, in which he. talked of his business, and showed a clear appreciation of his financial condition. It appears that in August, 1892, when Mrs. Pulver was taking him from Eberle's to her home, he met Judge Struble, with whom he had a conversation, and that he at that time had a clear recollection of things that had occurred, and was bright and intelligent. The evidence of other witnesses who saw him from time to time when he was at Eberle's, shows that he recollected his friends, he knew their ages and conditions, he knew their families and inquired about. them, and talked with visitors intelligently upon the usual topics of the day. It is very clear that he knew all about his own family, and that he had an exceedingly clear appreciation of his financial condition, and was perfectly aware what he wanted to accomplish by this bargain.

The evidence of the plaintiff's witnesses shows that he was a feeble old man, and undoubtedly he was not as bright or intelligent, nor was his mind as active as in his younger days. But it is not expected that a man of his age will retain his faculties to their full perfection. The law does not require that to make him competent to do· business. A man is perfectly competent to do business if he has a. clear appreciation of the particular business in which he is engaged, of the relation it bears to his fortune, of the expediency or inex-· pediency of it, and if he is able to judge rationally as to the reasonableness of the particular transaction. All this Morgan Smith was. able to do. In addition to this he knew clearly all about his own family and the necessities of his financial condition, and he had sound reasons which he gave for making the bargain which he did. It would be very serious if the law should say that whenever the faculties of a man begin to fail because of his age, it should be reason sufficient for taking from him the right to control his property. The power of such control is of great use to many old men, to insure to them proper and courteous treatment from their families. It has been the experience of many lawyers that as soon as a. man became old and infirm, he ceased to receive from his children that respect and care which, in his prime, he was enabled to command, and that but· for the hopes of the favors which they might:

obtain from him, he would be left to charity for that care which his age and necessities demanded. Because of that it was said by Chancellor KENT that the law would go a great way in assuring to old men the right to manage their fortunes, although their bodies and their minds might have become enfeebled with age.

But without laying any stress upon these considerations, it is sufficient to say that upon the testimony this man thoroughly understood the bargain which he made with his son; that it was a reasonable bargain to make; that it assured him a comfortable home or sufficient maintenance if he thought fit to go elsewhere, and that he was possessed of sufficient mind to enable him to make it.