## RAE FRISCH v. BENJAMIN FRISCH.

*Fraud By Wife On Husband—Fiduciary Relations—Striking Out of Order—Remand On Affirmance—Further Time to Plead.*

A mere general allegation of fraud, however strong in expression, is not sufficient to give equity jurisdiction, but specific facts must be alleged from which the court can find that fraud has actually been perpetrated.                                p. 274

Courts of equity derive their jurisdiction from the facts alleged rather than from the terms employed in setting up those facts.                                p. 275

The jurisdiction and control exercised by equity over parties occupying the fiduciary relationship of husband and wife is

not exclusively confined to transactions which result in benefits to the husband.                                        p. 276

Ordinarily speaking, money transferred by a man to his wife is *prima facie* a gift, but if he alleges that money belonging to him has been obtained by his wife by deception and false representations, amounting to fraud, equity has jurisdiction, upon proof of such allegations, to grant relief.    p. 277

The lower court 'had power to strike out its order, passed on the day on which defendant appealed from an order overruling her demurrer, by which defendant's time for pleading was extended till after the receipt of the mandate from the Court of Appeals, on the ground that the order was signed by inadvertence and that no bond staying proceedings had been filed.                              pp. 277, 278

In affirming an order which overruled appellant's demurrer to the bill, *held* that a decree *pro confesso,* which had been passed against appellant, should be stricken out, and she be allowed to answer the bill within such time as the lower court might determine.                                      p. 278

*Decided March 10th, 1926.*

Appeal from the Circuit Court of Baltimore City (Sol-TER, J.).

Bill by Benjamin Frisch against Rae Frisch, otherwise known as Ray Stinsky. From an order overruling a demurrer to the bill, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Louis Hollander,* with whom was *Saul A. Harris* on the brief, for the appellant.

*Leon H. A. Pierson,* with whom was *Richard E. Preece* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

On February 11, 1925, the appellee (complainant) filed his bill in the Circuit Court of Baltimore City against the appellant (defendant). A demurrer was interposed to the bill by the appellant and was overruled by the court, with leave to the appellant to answer within ten days from the date of that order. The appellant, declining to answer, entered an appeal to this Court on May 23, 1925, from the order overruling the demurrer.

The allegations of the bill of complaint, which for the consideration of the question raised by the demurrer are admitted to be true, are briefly stated as follows: That the appellee and appellant are husband and wife, having been married on August 12th, 1924; that at the time of the marriage they were the owners of the sum of $1,300, deposited in the Mechanics' Lexington Building and Loan Association in their joint names, which said money was the joint property of the appellant and appellee, having been received by them as a marriage gift; that on February 9th, 1925, the wife represented to the husband that she had been advised that it was necessary that she have medical attention, and that she needed $300 of the fund in their joint names on deposit in the said building association; that acting upon the representations made by the wife, the husband agreed that said sum of $300 should be withdrawn, but that when the husband and wife arrived at the building association on February 9th, the wife suggested that the full sum of $1,300, together with accumulated interest amounting to $39, on deposit in their joint names, should be withdrawn, and that the wife would take the sum of $300 needed for her medical treatment, and would permit the husband to deposit the balance of $1,039 in a bank subject to check, so that if the needs of the wife were greater than $300 the husband would be able to pay the same by check and not be compelled to attend the building association and withdraw the funds on deposit; that the husband acquiesced in this suggestion made by the wife, and thereupon the full sum of $1,339 was with-

drawn by check of the building association to the joint order of the husband and wife, which check was endorsed by the husband; that the wife retained possession thereof, and refused and still refuses to permit the husband to have any part of the moneys theretofore on deposit, but retains the entire fund in her possession; that on the day following the obtention of this money, the wife abandoned and deserted the husband without just cause or reason, and is at present living apart from him; that the obtaining of the withdrawal of the money as above described, which was the joint property of the husband and wife, was a fraud perpetrated upon the husband, but that notwithstanding this fact, he stands ready and willing to divide said money with his wife, yet she refuses to do so.

The prayers of the bill were: First, that a receiver should be appointed to take charge of said moneys and preserve or dispose of same under the direction of this court; second, that said Rae Frisch may be restrained from disposing by gift, assignment or otherwise of said moneys"; and for further relief.

The grounds alleged in the appellant's demurrer to this bill were: "First, that complainant does not state in his said bill of complaint such matters and facts as entitle him to any relief in equity; second, that it appears upon the face of said bill of complaint that this honorable court is without jurisdiction in the premises."

While the demurrer alleges two grounds as above set forth, they are, in effect, one, being that the matters and facts alleged in the bill of complaint do not constitute a case in which equity will grant relief. The appellee contends that there is a distinct and sufficient allegation of fraud. It is true that by specific words in the bill of complaint, fraud of the appellant is charged, but this alone is not sufficient to give a court of equity jurisdiction on the ground of fraud. The general allegation of fraud, however strong in expression, is insufficient without a statement of the circumstances relied on as constituting the alleged fraud.

Specific facts must be alleged from which the court can find that fraud has actually been perpetrated, before jurisdiction on this ground attaches. Courts of equity derive their jurisdiction from the facts alleged rather than from the terms employed in setting up those facts. *Wenstrom v. Purnell,* 75 Md. 113; *Townshend v. Duncan,* 2 Bland, 45; *Grove v. Rench,* 26 Md. 367; *Goodman v. Weinlein,* 61 Md. 449; *Miller's Eq. Proc.,* sec. 93; *Boyd v. Shirk,* 125 Md. 175.

The facts and circumstances alleged in the bill, relied on by the appellee as being sufficient to constitute fraud, are that his wife, by representations of her sickness and need of three hundred dollars of their joint money on deposit in the building association, and the further representation that if the whole amount was withdrawn from that association the defendant would take three hundred dollars thereof and permit the complainant to deposit the amount remaining in a bank subject to check, so that if the needs of the defendant were greater than three hundred dollars, the complainant would be able to pay the same by check, and not be compelled to go in person to the building association, induced the complainant to endorse the check of the building association payable to their joint order, so that thereby the appellant could get possession of the whole amount on deposit; after which the appellant retained all of said moneys and refused and still refuses to permit the complainant to have any part thereof.

In the case of *Chase v. Grey,* 134 Md. 619, this Court quoted with approval 2 *Pomeroy's Equity,* sec. 956, as follows: " 'Courts of equity have carefully refrained from defining the particular instances of fiduciary relations, in such a manner that other and perhaps new cases might be excluded. It is settled by overwhelming weight of authority that the principle extends to every possible case in which a confidential relation exists as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other. The relation and duties involved in it need not be legal; it may be moral, social, domestic or merely

personal' "; and the Court then goes on to say: "And in section 963 it is said that the doctrine extends to husband and wife with more or less force. Where the bill shows—as it does in this case—that the defendant by an abuse of a fiduciary relation has secured the possession of another's money a court of equity has concurrent jurisdiction with courts of law to pass a pecuniary decree for the recovery of the money. 1 *Pom. Eq.*, sec. 186. In *Billage v. Southee,* 9 Hare, 534, it is said that: 'No part of the jurisdiction of the court is more useful than that which it exercises in watching and controlling transactions between persons standing in the relation of confidence to each other; and, in my opinion this part of the jurisdiction of the court cannot be too freely applied, either as to the persons between whom or the circumstances in which, it is applied. The jurisdiction is founded on the principle of correcting abuses of confidence, and I shall have no hesitation in saying it ought to be applied whatever be the nature of the confidence reposed, or the relation of the parties between whom it has subsisted. I take the principle to be one of universal application.' "

In the fiduciary relationship of husband and wife the husband has generally been considered the dominant party and therefore in a position to influence the actions of the wife in respect to her property or the common property. For this reason courts of equity have vigilantly scrutinized transactions between husband and wife wherein the husband became the beneficiary. This jurisdiction and control exercised by a court of equity over parties occupying such fiduciary relationship was not exclusively confined to transactions which resulted in benefits to the husband, and we see no sound reason why any such interpretation should be given the rule. In *Boyd v. De La Montagnie,* 73 N. Y. 502, quoted with approval in *Chase v. Grey, supra,* it was said: "A court of equity will interpose its jurisdiction to set aside instruments between persons occupying relations in which one party may naturally exercise an influence over the conduct of the other. A husband occupies such a relation to the wife

and the equitable principles referred to would apply to them in respect to gratuitous transfers by the wife to the husband, however it might be in ordinary business transactions, which the wife may legally engage in. When this relation exists the person obtaining the benefit must show, by the clearest evidence, that the gift was freely and deliberately made. The burden is upon the person taking the gift to show that the transaction was fair and proper."

Ordinarily speaking, money transferred by the husband to the wife is *prima facie* a gift, but when the husband comes into a court of equity and alleges that money belonging to him has been obtained by his wife by her deception and false representations which amount to fraud, a court of equity has jurisdiction, upon proper proof of such allegations, to grant relief. The relationship of husband and wife is such as would make it possible for either of the parties to obtain property belonging to the other by deceit and false representations, which could not be so obtained by a stranger, for the reason that the existence of the relationship, and the affection usually existing between husband and wife, naturally carries with it confidence in each other, and renders the wife or husband, as the case may be, more likely to be a victim to the artifices and deceit of the other. It is our opinion that a court of equity has jurisdiction in this case and that the bill contains such allegations as require the defendant to answer. It therefore follows that there was no error committed by the lower court in overruling the demurrer.

Subsequent to the order for the appeal in this case, on May 29th, 1925, a decree *pro confesso* was passed by the lower court against the defendant. The record discloses that on the day the appeal was taken (May 23rd, 1925), the lower court, upon the petition of the appellant, passed an order extending the defendant's time for pleading to and including fifteen days after the receipt of the mandate of the Court of Appeals. Immediately following this order there appears in the record: "Stricken out on June 4, 1925,

as it was signed by inadvertence, and no bond staying proceedings has been filed." We are of opinion that the lower court had power to strike out the order extending the time of the appellant to plead, on the ground therein stated. As the case now stands in the lower court, it appears that a decree *pro confesso* has been passed against the appellant. In the view we take of the case, we are of the opinion that upon proper application this decree should be stricken out and the defendant be allowed to answer the bill of complaint within such time as the lower court may determine. It follows from what we have said that the order of the lower court overruling the demurrer will be affirmed, and the case remanded in order that the defendant may answer.

> *Order affirmed, and case remanded for further proceedings in accordance with the views expressed in this opinion, with costs to the appellee.*