In the Matter of the Estate of CHARLES L. CLARK, Deceased. ARTHUR C. KLINE, Administrator, etc., of CHARLES L. CLARK, Deceased, Appellant; JOHN E. CLARK, Respondent.

Fourth Department, November 11, 1931.

*A. C. Hall* [*David B. Lisle* of counsel], for the appellant.

*Rowe & Walsh* [*A. F. Walsh* of counsel], for the respondent.

CROSBY, J. Decedent Charles L. Clark died intestate, leaving the petitioner, John E. Clark, a brother, and Saphrona C. Kline, a sister, his only heirs at law and next of kin. The administrator is a son of Saphrona C. Kline. Shortly after decedent's death the wife of the administrator, being a daughter-in-law of Saphrona C. Kline, wrote to the petitioner a letter (Exhibit 1), too long to quote in an opinion, but saying, in substance, that the writer did not " imagine " that decedent's estate would amount to more than $1,000 or $1,200; that her mother-in-law Saphrona was needy; that

the petitioner was in good circumstances, and urging petitioner to assign his interest in decedent's estate to Saphrona in order to help her and in order to keep the property in the Clark family. It is unimportant that the property would no more be kept in the Clark family if given to Saphrona than if kept by petitioner. The letter further stated, in substance, that the writer was writing without the knowledge of Saphrona. The letter was affectionate in tone, and was filled with family news items.

Without any ado, and without making further inquiry as to the value of decedent's estate, petitioner executed and sent to his sister Saphrona the requested assignments. Later it was thought best to have more formal assignments executed by the petitioner, and the writer of Exhibit 1 wrote another letter (Exhibit 2) to the petitioner thanking him for his generosity and saying: " Just as soon as you sign those other papers and return, they can go right ahead and get everything settled up," etc.

Before these " other papers " were executed and delivered by petitioner, the administrator and his wife began to discover evidences of various bank deposits owned by decedent and it developed that decedent left an estate of nearly $16,000. Petitioner was not informed of these discoveries, and the first intimation he had of the true state of facts was when he received official notice that his share in the estate had been assessed for inheritance tax at the sum of $7,510.97. This called for some explanation from the administrator's wife, and she wrote the petitioner another letter (Exhibit 7). In this letter she assured petitioner that " there was no intent to decieve (sic) or wrong you," and then informed him, in substance, that decedent had always told her that he intended making a will and giving his entire estate to members of her family, and the letter further said that if the writer and her husband, the administrator, made a charge for all the nursing and doctoring they had done for decedent they would consume the whole estate anyway. The implied threat, contained in the last statement, later became active in the form of a claim by the administrator, although, in a sworn statement in inheritance tax proceedings, the administrator had said there were no claims against the estate excepting funeral expenses, administrator's commissions and some charges for legal services. (Exhibit 9.)

We have, then, this situation — the petitioner gave to his sister Saphrona a present of over $7,500, induced thereto by statements made by the donee's daughter-in-law, which statements were not in fact true. The surrogate made only one finding of fact, and that is: " That the [assignments] were obtained through false and fraudulent representations, without any consideration," etc. This find-

ing of fact concludes with the legal conclusion that the assignments "are and each of them is null and void." The record justifies, if indeed it does not compel, two other important findings of fact: (1) That when Winnie Kline, wife of the administrator, wrote Exhibit 1 and later when she wrote Exhibit 2 she was innocent of any intent to falsify. She supposed she was telling the truth; (2) that in writing the letters (Exhibits 1 and 2) Winnie Kline acted without any authority, express or implied, from Saphrona Kline.

The petitioner asked for a compulsory accounting by the administrator; the administrator countered with the claim that the petitioner had no interest in the estate such as to entitle him to an accounting, and thus the validity of the assignments from petitioner to his sister Saphrona came squarely before the surrogate, who, by supplemental citation, brought Saphrona into the case, thereby giving him jurisdiction of the subject-matter and of all the parties in interest.

We have, then, this interesting question: Can the donor of a gift recover the same back from the donee on the ground that the gift was induced by untrue statements innocently made, not by the donee nor by her agent, but by a volunteer in the transaction?

This question naturally divides itself into two questions: *First*, in order to secure rescission of a transaction is it necessary that it should have been induced by actual, intentional fraud? In a law action for deceit it is incumbent on one seeking damages for fraud to prove, among other things, that false statements were made with knowledge of their falsity, or with reckless disregard of their truth or falsity. But, " an action may be maintained in equity to rescind a transaction which has been consummated through misrepresentation of material facts not amounting to fraud. Unlike an action at law for damages, intentional misstatements need not be proved." (*Bloomquist* v. *Farson*, 222 N. Y. 375, 380.)

This is the next question: Having concluded that misstatements not amounting to actual fraud will furnish a basis for relief in equity by means of rescission, is it essential to that relief that the misstatements should have been made by the donee or her duly authorized agent? There are many cases, both actions in equity for rescission and actions at law for damages, holding that one who accepts the benefits of a transaction must also accept responsibility for the means employed to achieve the result. (*Bloomquist* v. *Farson*, 222 N. Y. 375; *Taylor* v. *Commercial Bank*, 174 id. 181; *Fairchild* v. *McMahon*, 139 id. 290; *Green* v. *Des Garets*, 210 id. 79; *Krumm* v. *Beach*, 96 id. 398.)

However, we do not believe that the decision in this case has to rest on any theory of adopted agency. In an old case (*Bedell* v.

*Bedell*, 37 Hun, 419) the basis of the action for rescission of a gift was, to be sure, actual fraud. But upon the point now being considered the case was much like the case at bar, in that the misstatements that induced the gift (the gift being the surrender by plaintiff to defendant of a contract for the payment of money by defendant to plaintiff) were made by a volunteer who was not an agent of defendant. The court said: " It is not a question of agency, but a question of fraud. * * * It is quite immaterial who perpetrated the fraud, the defendant cannot enjoy its results and retain its benefits by a claim that it was unauthorized by him. * * * He cannot retain the instrument for use against the plaintiff on the ground that the fraud was unauthorized by him and committed without his knowledge or procurement."

Regardless of any question of agency, equitable relief, by way of rescission, can be granted in a case like this where the gift was the result of a material mistake of fact on one side only.

" Equity cannot reform an agreement unless both parties were mistaken, but it can interfere to prevent the enforcement of an unjust agreement induced by the mistake of one." This is the language of the opinion in *Moffett Co.* v. *City of Rochester* (82 Fed. 255). The decision in that case was reversed in the Circuit Court of Appeals (91 Fed. 28), but in the United States Supreme Court the decision of the Circuit Court of Appeals was reversed and that of the Circuit Court affirmed (178 U. S. 373).

In 15 American and English Encyclopædia of Law (1st ed.), page 647, the rule is stated as follows: " Equity will not *reform* a written contract unless the mistake is proved to be the mistake of both parties, but may *rescind* and *cancel* a contract upon the ground of a mistake of facts material to the contract of one party only." The rule is stated in substantially the same way in 2 Pomeroy Equity Jurisprudence (4th ed.), section 870.

There is abundant authority for the rule hereinbefore stated, both in New York State and other jurisdictions. *Flynn* v. *Smith* (111 App. Div. 870) is a case in point. There the court said: " In such case relief may be had not only on the ground of fraud or mutual mistake, but also upon the ground that, owing to lack of knowledge of a material fact by the party seeking the relief, without negligence on his part, the minds of the parties never met with respect to the property or property interests transferred."

The case of *Martens & Co., Inc.,* v. *City of Syracuse* (183 App. Div. 622) was decided by this court. There plaintiff by mistake made a written bid of $4,311 to build a schoolhouse, instead of $43,110, as intended. The decision of this court upheld the right of the plaintiff to rescind, though the mistake was wholly unilateral.

(See, also, *Bennett* v. *Judson*, 21 N. Y. 238; *Crowe* v. *Lewin*, 95 id. 423; *Werner* v. *Rawson*, 89 Ga. 619; *Diman* v. *Providence, W. & B. R. R. Co.*, 5 R. I. 130; *Smith* v. *Mackin*, 4 Lans. 41; *Rider* v. *Powell*, 28 N. Y. 310; *Hartford & New Haven R. R. Co.* v. *Jackson*, 24 Conn. 514; *Rowland* v. *New York, N. H. & H. R. R. Co.*, 61 id. 103; *Andrews* v. *Andrews*, 12 Ind. 348; *Boyd* v. *De La Montagnie*, 73 N. Y. 498; *Brown* v. *Lamphear*, 35 Vt. 252; *Coon* v. *Smith*, 29 N. Y. 392; *Wheadon* v. *Olds*, 20 Wend. 174.)

It must be true, of course, that demands for equitable relief, by way of rescission, of bargains induced by unilateral mistake, must address themselves to the conscience of the court. Negligence in making the mistake, laches in correcting it, a change in the relation or situation of the parties so that an undeserved hardship is cast upon another party to the transaction, any conduct on the part of the party seeking relief that is unconscionable, will result in the denial of the relief.

But in this case we think the surrogate correctly decided the issue before him, though on a wrong theory. We find no fraud on the part of Saphrona Kline nor on the part of any one else in her behalf. But we do find that the petitioner John E. Clark, without negligence on his part, assigned his interest in this estate to his sister Saphrona Kline, induced thereto by misstatements of Winnie Kline, which misstatements, though innocently made, had the same effect as if they had been fraudulent.

The record shows that petitioner gave to his sister a quitclaim deed of the real estate of decedent, in addition to the instruments involved herein, which relate to personal property, and petitioner, in his testimony, makes it clear that he supposed that the real estate was substantially all there was of the estate, and that he was willing that his sister have what he supposed he was giving to her. As the decree herein directs the administrator to render an account of his handling of the " goods, chattels and credits " of the estate, the gift of the real estate is not affected by this decision. Petitioner has in effect waived any claim to a rescission in so far as the real estate is concerned.

The decree herein should be affirmed, with costs to the respondent payable out of the estate, and the matter sent back to the surrogate to enter an order in accordance herewith.

All concur. Present — SEARS, P. J., CROUCH, EDGCOMB, THOMPSON and CROSBY, JJ.

Decree affirmed, with costs to respondent payable out of the estate. Certain findings of fact disapproved and reversed and new findings made.