MABEL H. STILWELL, Respondent, *v.* HOLLAND DUELL, Appellant.

Judgment affirmed, with costs. No opinion. Present — Finch, P. J., Merrell, Martin, O'Malley and Untermyer, JJ.; O'Malley and Untermyer, JJ., dissent and vote for reversal and a new trial.

O'MALLEY, J. (dissenting). The judgment appealed from is predicated upon the conversion by the defendant, a member of the bar, of 600 shares, class B common stock of the American Tobacco Company, the property of the plaintiff, his former wife. The defendant admits former ownership in the plaintiff, but contends that the stock was transferred to him in exchange for other securities owned by him and for a consideration in excess of the actual value of plaintiff's stock. The issue thus presented has been resolved in favor of the plaintiff. The judgment requires the defendant to convey to the plaintiff 2,400 shares of American Tobacco Company class B common stock (resulting from twice splitting up the original shares) and the account for all dividends and the value of all other rights received by the defendant since November 24, 1920, the date of the alleged conversion. The stock now has a value of some $180,000. Dividends and value of other rights received by the defendant amount to approximately $150,000. It is apparent that the liability imposed upon the defendant is very substantial. The value of the stock at the date of the alleged conversion was but the sum of $68,000. The parties lived together as man and wife for some twenty years after

their marriage in 1904. They were divorced in 1925 and both have remarried. This suit was instituted in 1930, some ten years after the alleged act of conversion, when defendant's alleged wrong is claimed to have first been discovered. Concededly the parties lived happily and enjoyed each other's confidence until shortly before their final separation. The defendant had full control of his wife's property and business affairs. Apparently she never doubted or had occasion to doubt his integrity. She signed without hesitation any paper he prepared or presented. She admitted that the defendant always made full disclosure of all facts pertaining to the contents of any paper so signed. They shared a joint safe deposit box to which both had full access. The defendant not only acted in the confidential relation of husband and agent, but it may be assumed, without conceding such fact, that the evidence warranted a finding that he also acted as her attorney. In view of such relationship it may be conceded, therefore, that the burden was upon him to show by clear and convincing evidence the transaction here involved was thoroughly understood by the plaintiff; that there was lack of deception and undue influence and that it was fair and voluntary. (*Hayes* v. *Kerr*, 19 App. Div. 91; *Boyd* v. *De La Montagnie*, 73 N. Y. 498; *Cowee* v. *Cornell*, 75 id. 91, 99; *Butler* v. *Prentiss*, 158 id. 49.) The question presented is whether the defendant did not fully sustain the burden thus resting upon him; or, at least, present proof of such a character as to require plaintiff to " go forward " to establish her case. The defendant proved without contradiction that in September, 1919, he transferred securities owned by him to the plaintiff, as follows: 141 shares of F. N. Burt Co., Ltd., preferred, of the value of $14,064.75; 620 shares Carbon Steel, first preferred, of the value of $65,100; 350 shares Carbon Steel, second preferred, of the value of $25,725; 680 shares Carbon Steel, common, of the value of $76,500; 50 shares Goulds Manufacturing Company, common, of the value of $5,000; 300 shares Westinghouse Air Brake Company, common, of the value of $33,375; and 100 shares American Sales Book, preferred, of the value of $12,900. The total value of such securities was in excess of $232,000. According to the defendant this transfer was made under the following circumstances. The parties at the time were coguarantors of a loan in excess of some $217,000, made to one Collins, who, with his wife, was an intimate friend of the plaintiff and the defendant. This loan, which was at the Irving National Bank, had to be liquidated. The defendant desired that suit be instituted against Collins. To this the plaintiff demurred and herself offered to assume the entire obligation. The defendant refused to permit her to do so and agreed to share a part of the burden. Being reluctant to sell stock of certain companies for which he was attorney, he suggested to plaintiff that she permit him to convert some of her readily marketable securities (including American Tobacco Company stock) into cash in return for which he would transfer to her securities owned by him. To this arrangement she agreed. The defendant was to have the use of 600 shares of the common stock of the American Tobacco Company in exchange for his securities. These 600 shares were a part of 1,600 belonging to the plaintiff which had been pledged as collateral for the Collins loan. The defendant testified that while at the time he expected to sell the 600 shares in part liquidation of the loan, he later liquidated it by applying approximately $117,000 of the plaintiff's other securities and by paying $100,000 balance with his own personal assets. Plaintiff's other securities used by the defendant were Liberty bonds, Carbon Steel common and McClure

Publications, Inc. Of the plaintiff's 1,600 shares held as collateral to the Collins loan, 600 were released in October, 1919, and repledged for another loan at the Lincoln Trust Company, in which both parties were interested. The balance, or 1,000 shares, were repledged with the Irving National Bank for still another loan. The defendant, however, according to his own testimony, was treated as the equitable owner of the 600 shares, although they still stood in the name of the plaintiff. The defendant testified that in November, 1920, there was a modification of the original agreement between the plaintiff and himself with respect to the exchange. This modification was to the effect that the defendant should take, instead of the 600 shares of common which were at the time still pledged as collateral, 600 shares of the class B, which the plaintiff had in the meantime received as stock dividends. To this substitution the plaintiff agreed. Accordingly, on November 24, 1920, the defendant transferred to his own name the stock here involved pursuant to powers of attorney indorsed thereon by the plaintiff. As a result of this transaction, it is contended by the defendant, the plaintiff was relieved of the liability of the Collins loan which the defendant contended was incurred at her request and in opposition to his wishes. This had been accomplished by using approximately $117,000 of the plaintiff's securities in payment of the loan in return for which the plaintiff received the securities transferred to her by the defendant of a value of $232,000. It is, therefore, contended that the plaintiff profited over and above all contributions by her, including the 600 shares of Tobacco stock, to the extent of some $47,000. It is to be noted, of course, that plaintiff's counsel contends that she was in no way liable for the Collins loan and that this obligation rested wholly upon the defendant. Plaintiff herself seems not to have specifically denied the defendant's testimony that this loan was made at her request and over defendant's objection; nor to have denied the substance of the defendant's testimony relating to this agreement for the exchange of securities. But whether any part of the obligation arising from the Collins loan was chargeable to the plaintiff, we are confronted with the undisputed fact that a little more than a year prior to the time when the defendant took title to the shares of stock here involved, he did transfer to the plaintiff securities owned by him, the value of which has already been stated. That such transfer was made in payment of some obligation owing to his wife finds corroboration in a writing found by the plaintiff in their joint safe deposit box after the parties had separated. On the back of this memorandum was the following notation: " Data re stocks transferred to M. H. D. Sept/19 (signed) H. D." And the body of the memorandum reads:

" Sept/19

" The Carbon, Burt, Gould's, Westinghouse, and Am Sales Book shares transferred to MHD at a value of $250,000.00 which covers by a margin which I figure as $30,000 all my financial obligations growing out of any & every matter, carry dividends exceeding seven per cent on that valuation & exceed the dividend yield of such liberty bonds, miscellaneous & stocks as I have used (or will) to liquidate my $220,000 loan at the Irving Nat'l. Bank. HSD.

" Liberty bonds sold Sept/19 & loan at Irving reduced below $150,000. HD.

" F. L. Collins, McClure Publications payment, & 200 Carbon C used to complete Irving payment.

" Irving loan pd. in full May/20. HD."

The stocks referred to in this memorandum were the same stocks transferred by the defendant to the plaintiff in September, 1919, which transfer, as already noted, is clearly established by uncontradicted evidence. The memorandum refers to a loan of $220,000 at the Irving National Bank, the amount of which was stated by the defendant in his testimony to be $217,000. This memorandum was found by the attorney for the plaintiff in the joint safe deposit box in September, 1924, where it had remained, according to the defendant's testimony, since September, 1919. While plaintiff denied ever having had knowledge that the defendant had ever taken title to the stock in question or ever having authorized him so to do, and further denied that she had ever transferred it to him, testimony elicited on her cross-examination tended to support the defendant's claim that he gained possession of the stock as a result of the agreement with the plaintiff for the exchange of securities. The plaintiff had knowledge of the Collins loan, although she claims not to have remembered its exact amount. She admitted that the collateral which provided credit for such loan included her American Tobacco Company stock. While she testified that she had no recollection of ever selling any of such stock to the defendant, she did recall something about an exchange of securities. On cross-examination she was asked: " Q. Do you recollect at any time telling him that you would exchange any of your securities for any of his? A. I recollect now better than I did before, I think that he suggested that I exchange some of my securities that were salable for certain securities of his that were not salable. The Court: When? The Witness: I have not the date of that, but it was some time, I would think, about 1919. Wouldn't that be the year? Q. Your best recollection is that it was about 1919? A. Yes, but you can find that out, as it is written down positively." It is significant that the plaintiff when asked respecting an exchange rather than a sale, recalled that such an exchange had been made. She further testified that if such an exchange of securities had been made that the exchange " would naturally have been some of my best Tobacco stocks," for the reason that they were her best stocks and had been used for loans theretofore. On her examination before trial she made a similar admission. Further, on cross-examination the plaintiff testified: " Q. Mrs. Stilwell, did you ever deliver to the defendant any stock of the American Tobacco Company of any nature whatsoever of any class or category? A. Personally? Q. Yes. A. Hand it from me to him? Q. Yes. A. Not that I recall. .Q. Did there ever pass from you or from your control to the defendant any stock of the American Tobacco Company of any class or category? A. I don't know. I don't know what stocks might have passed from me to him." On rebuttal and near the close of the trial the following was elicited from the plaintiff: " By Mr. Blair (continuing): Q. Do you recall having any conversation with the defendant in the year 1919 and the year 1920 whereby he proposed to transfer to himself 600 shares of American Tobacco Company common B? A. I have no recollection of any such conversation. By the Court: Q. Will you say that it did not take place? A. That is difficult." Moreover, there was no specific denial by plaintiff of defendant's testimony with respect to his conversation with her about the exchange. An all-important question naturally suggests itself. What consideration passed to the defendant for the securities transferred to the plaintiff in 1919, if it was not the stock involved in this suit? No explanation comes from the plaintiff or her counsel, save the suggestion merely that there may

have been other stocks used by the defendant to liquidate the Collins loan, or that there may be other securities for which the defendant has not accounted. No contention to this effect seems to have been made at any time on the trial and it comes for the first time in the brief of counsel on the argument. Surely if the exchange had been for securities other than those described by the defendant the burden of " going forward " to establish such fact would seem to rest upon the plaintiff. No evidence whatever was offered to overcome defendant's proof that the exchange was made for the 600 shares of American Tobacco stock, the Liberty bonds and the Carbon Steel used by him in the liquidation of the Collins loan. The defendant, of course, by virtue of his relationship to the plaintiff, was called upon to explain in what manner he received and what consideration, if any, he paid for the plaintiff's property. Defendant's explanation was offered, and defendant's proof required plaintiff's explanation for her having received from him property in excess of $232,000 shortly before the defendant took title to her stock. Is it likely that the defendant in 1920 would have been guilty of a misappropriation of his wife's property? For years he had control of her affairs. In 1920 her private fortune was between one and two million dollars. The parties had five children and were living happily. No rift in their marital relations had appeared. Each had the full confidence of the other. The defendant himself enjoyed an annual income from his practice of some $85,000 and his personal estate exceeded $300,000. For years he had been intrusted with the plaintiff's property and was in full control of her affairs. On one occasion he had borrowed from her $600,000, all of which he had repaid. Opportunity for conversion, or even theft, had been his for all of such time. Yet no claim is made that the defendant ever violated his wife's trust and confidence, save in the single instance here involved. In all other respects he seems to have protected plaintiff's interests with meticulous care and fidelity. Nothing had occurred in 1920 to indicate that the happy marital relations of the parties would not continue. Why should the defendant at such a time convert to his own use the property of his wife, the mother of his five children? Certain facts and circumstances required explanation on the part of the defendant. The use of the stock as collateral to a loan made by the plaintiff after title had passed to the defendant; payment of dividends thereon to the plaintiff for a short time after such transfer and the payment by her of income tax upon such dividends for a similar period in income tax reports prepared by the defendant; his failure to include this stock as belonging to him in the trust agreements executed by him in 1920, 1921 and 1922, were matters which called upon the defendant for a fuller and further explanation than he offered. His counsel on redirect examination might well have questioned him more fully respecting these matters and upon a new trial, which in the interest of justice should be ordered, the attention of the defendant should be particularly directed to all such matters to afford him opportunity for the fullest explanation. In this connection, however, undue significance should not be attached to defendant's failure to mention the transfer of this stock to himself when inquiry was made by plaintiff's attorney after the parties had separated respecting securities belonging to the plaintiff. If what the defendant says is true, the 600 shares here involved belonged to him and not to the plaintiff. There was, therefore, no reason why he should have included this stock or mentioned its transfer in connection with the subject of inquiry. It is to be borne in mind that there was a

lapse of ten years between the date of the alleged wrong and the time when the defendant was called upon for explanation. Many of his records had been at that time destroyed. Perhaps were it not for the memorandum found in the joint safe deposit box referred to, he would have had difficulty in explaining the transaction as fully as he has done. But, as already noted, he has made sufficient explanation to require the plaintiff herself to offer some evidence as to why she should receive in excess of $232,000 worth of securities in the year 1919. For the reasons indicated, the judgment should be reversed as against the weight of the evidence and a new trial ordered for the purpose and to the end herein indicated, with costs to the appellant to abide the event. Untermyer, J., concurs.