In the Matter of MAE MULRYAN, as Executrix of SARAH KELLEHER, Deceased, Respondent. KATHERINE NELSON, Appellant.

Fourth Department, June 27, 1963.

Driscoll, Mathews, Gingold & Cass (Daniel F. Mathews of counsel), for appellant.

MacKenzie, Smith, Lewis, Michell & Hughes (John F. Lawton of counsel), for respondent.

Per Curiam. The claimant, Katherine Nelson, has appealed from a decree of the Surrogate's Court of Onondaga County dismissing her claim based on personal services allegedly rendered to the decedent.

The Surrogate took testimony as to the legal effect of a paper which she signed when a $500 legacy was paid to her. The paper, a printed form which apparently is normally employed in that county, not only served as a receipt for the legacy but contained language in the nature of a general release. After hearing only the claimant's testimony the Surrogate held, as a matter of law, that this paper constituted a complete release to the estate of all claims and dismissed her claim for personal services.

There is no dispute about the fact that she was entitled to the legacy. That had never been questioned. The executrix contends that this paper constituted a complete release even though there was no consideration therefor. It is suggested that the prepayment of the legacy before it was technically due constituted consideration. However this point was not discussed with the claimant, who was not told that payment was not then due. She intended to relinquish nothing at the time the $500 payment was made. Therefore, the claim that there was consideration for the release cannot stand.

Under the circumstances she had the right to rely upon the attorney's statement that the paper was simply a receipt. Claimant had had dealings with the attorney who represented the estate and at whose request she signed the paper. The decedent had lived with her for some time and, when mail addressed to the decedent accumulated, it had become customary for claimant to call the attorney, who would then pick it up. He had been at her house several times before the receipt was signed. At the time that she signed the receipt she was not told that it contained a release. She did not read it. She relied upon the attor-

ney and thought it was merely a receipt for her legacy. The normal duty that might be required of a person to read such a paper before signing it does not prevail in this case because of the relationship of the claimant and the attorney for the estate.

There probably was a mutual mistake. She did not intend to relinquish her claim, and he did not think that she had a claim to surrender. Up to that time there had been no discussion between them that she had, or would make, a claim for personal services to the decedent. She had not asserted it either orally or by filing a claim. However, whether there was a mutual mistake or a unilateral mistake on her part is not determinative.

In *Matter of Clark* (233 App. Div. 487) this court held that where a person assigned his share of an intestate estate, relying on the statement of his sister's daughter-in-law that the estate would amount to approximately $1,000 to $1,200, the assignor was entitled to rescission when it later developed that the estate amounted to $16,000. Rescission was allowed even though the incorrect information given to him was not actuated by fraud and the daughter-in-law was not an agent of the sister. This court said (p. 489): " But, ' an action may be maintained in equity to rescind a transaction which has been consummated through misrepresentation of material facts not amounting to fraud. Unlike an action at law for damages, intentional misstatements need not be proved.' (*Bloomquist* v. *Farson,* 222 N. Y. 375, 380.) "

The present proceeding has all of the aspects of an equity action for rescission, the claimant taking the position that she should be relieved from the portions of the paper that purported to constitute a release and the defendant contending that she should not be. Thus it seems that the determination in the *Clark* case, which also originated in Surrogate's Court, is applicable in this instance.

In *Wheeler* v. *State of New York* (286 App. Div. 310, 313) the court cited the *Clark* case with approval, making this statement: " There is, moreover, authority by which the release might be avoided for a unilateral mistake only, if there were in fact no consideration given to obtain it; even though the instrument would not be invalid, as we have seen, for absence of consideration alone under the statute. (5 Williston on Contracts [Rev. ed.], § 1574; Restatement, Restitution, §§ 26, 49; *Matter of Clark,* 233 App. Div. 487.) "

Finally, in *Buffalo Elec. Co.* v. *State of New York* (9 A D 2d 372), in holding that under certain circumstances the acceptance of a purported final payment should not operate as a release to the State of New York, our court said (p. 374): " An intent to

release a claim gratuitously is not to be inferred unless the intent to do so is clearly and unequivocally expressed. Moreover, where a release is given without consideration, a unilateral mistake on the part of the one giving the release may be sufficient to vitiate it (*Wheeler* v. *State of New York,* 286 App. Div. 310, 313; *Matter of Clark,* 233 App. Div. 487; Restatement, Restitution, §§ 26, 49; 5 Williston, Contracts [Rev. ed.], § 1574, p. 4402; 58 Mich. L. Rev. 90). Whether the mistake was one of law or of fact is now immaterial (Civ. Prac. Act, § 112-f).''

In the present case the Surrogate incorrectly denominated the problem as a question of law only. There were factual considerations that should have been considered and passed upon by him. The matter, therefore, should be remitted to Surrogate's Court for further proceedings in accordance with this opinion.

WILLIAMS, P. J., BASTOW, GOLDMAN, HALPERN and McCLUSKY, JJ., concur.

Decree unanimously reversed, with costs and matter remitted to the Surrogate's Court of Onondaga County for further proceedings in accordance with the opinion.