FITZGIBBON v. PARKER et al.

(Supreme Court, Appellate Division, First Department. March 24, 1911.)

1. MORTGAGES (§ 77*)—EXECUTION OF INSTRUMENTS—KNOWLEDGE OF CONTENTS.
    In absence of mistake or of fraud in inducing one to make instruments to pledge realty to secure payment of another's debt, the signer is charged with knowledge of the contents of such instrument.
    [Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 176; Dec. Dig. § 77.*]

2. MORTGAGES (§ 25*)—CONTRACT—CONSIDERATION—SUFFICIENCY.
    Instruments signed by plaintiff requested defendants to pay plaintiff's son a certain sum, stating that in consideration of such payment she would give them her note for that amount, and pledged a tract of realty to its payment, and that, if defendants would assist her son, she guaranteed any indebtedness which he or another son owed them, and also

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pledged the property for the faithful payment of any obligations owing defendants from her son, and to make good any loss sustained therefrom or in the future, and also provided that the instruments should cover all loans made to the firm of which the sons were members provided their signatures appeared as additional guarantors. *Held*, that the agreement to pledge plaintiff's property was supported by a sufficient consideration.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 29–42; Dec. Dig. §. 25.*]

3. MORTGAGES (§ 86*)—FRAUD—SUFFICIENCY OF EVIDENCE.

Evidence in an action to cancel instruments pledging plaintiff's realty to the payment of the indebtedness of her son *held* to sustain a finding of fraud by one of plaintiff's sons and the attorney who drew the instrument in inducing plaintiff to sign it.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 86.*]

Appeal from Special Term, New York County.

Action by Annie L. Fitzgibbon against John Alley Parker, impleaded. From a judgment for plaintiff, the defendant named appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Siegel & Siegel (Jacob H. Corn, of counsel), for appellant.
Horace E. Parker, for respondent.

LAUGHLIN, J. This is a suit in equity to obtain the cancellation of two papers in the form of letters from the plaintiff to the defendants, one of which the defendants procured to be recorded in the office of the register of the county of New York, and claim that the same is a lien upon and against two parcels of real estate situate in the county of New York owned by the plaintiff, and the other, which purports to be a lien upon one of said parcels of real estate, appears to have been witnessed by a subscribing witness who attempted to prove the execution thereof before a commissioner of deeds, but failed to sign the affidavit, and it was presented for record, but was withdrawn after the question as to whether it should be recorded was referred to the corporation counsel for an opinion.

According to the allegations of the complaint, the theory upon which the plaintiff deemed herself entitled to have the instruments and the record of the one which has been recorded canceled is that they were never delivered to the defendants, or to either of them; that her signature thereto was procured by fraud; that they were without consideration; that there has been a failure of consideration therefor; that the plaintiff has on her part performed the terms and conditions thereof, and defendants have failed to perform said terms and conditions on their part; and that one of said instruments was recorded wrongfully and through fraud, in that it was attempted to prove the same by a subscribing witness who was not requested by plaintiff to be a subscribing witness and without her knowledge or consent. The trial court found that the plaintiff neither delivered nor authorized the delivery of the instruments to the defendants or either of them, and that there was no consideration, and that there was a failure of consid-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

eration, and that plaintiff performed by executing the note, and that defendant failed to perform by giving the firm credit for the entire proceeds of the note, and by failing to advance to said firm further moneys, and that plaintiff did not request Newman who signed and proved the instrument which was recorded to sign or prove the same as a subscribing witness, and the same was so signed, proved, and recorded without her knowledge or consent and was not entitled to be recorded, but did not find that the plaintiff's signature to either of the instruments was procured by fraud.

The judgment cannot be sustained on these findings, for in the absence of fraud in inducing the plaintiff to execute the instruments, which she concedes she signed, or mistake, she is chargeable with knowledge of their contents; and, if she knew their contents, then it is manifest that she intended that they should be delivered to the defendants, for they are addressed to the defendants, and one of them expressly relates, among other things, to the discount of her note for $10,000, which the evidence shows she executed for the purpose of having it discounted by the defendants for the benefit of her son Richard A. Fitzgibbon, and that she authorized the recording of the one which was recorded, for it recites that defendants were to be at liberty to record it if they so desired. The same evidence shows that there was a consideration for the execution of the instruments. In one she expressly requested the defendants to pay to her son Richard the sum of $10,000, and she stated that, in consideration of such payment, she would have handed to them therewith her note for that amount with interest for 30 days, and that she pledged one of the parcels of her real estate to the payment thereof, and she therein agreed that, if the defendants would assist her son in this manner, she would guarantee any indebtedness which he or another son, Morris J. Fitzgibbon, owed to them. This instrument also contains the following:

"My son, Mr. R. A. Fitzgibbon, tells me that his firm is at the present time in need of some assistance, and, inasmuch as I am away from New York and the necessity of promptness in meeting the situation is necessary, I am pleased to give you this letter, assuring you that any indebtedness of my son, or any renewals of same, which you may extend to him until I can return to New York will be guaranteed by myself, and it is understood herewith that, if you help us as above stated, that I pledge my property for the faithful payment of any obligation that my sons may be due you."

The other instrument, which is the one which has been recorded, states that the consideration therefor is the fact that the defendants had made certain loans and advances amounting to several thousand dollars on the strength of the signatures of her two sons, and were about to make further loans and advances to the extent of several thousand dollars more on the strength of their signatures. The effect claimed for that instrument is that it was a mortgage upon the two parcels of real estate owned by her and known as Nos. 118 West Seventy-Eighth street and 150 West Seventy-Ninth street, borough of Manhattan, New York, to secure her guaranty therein contained, by which she obligated herself to indemnify the defendants against any and all losses that they might sustain "by reason of the advancements and loans of any and all moneys given on the strength of the signa-

tures, guarantees, and indorsements of my two sons, Richard A., and Morris J. Fitzgibbon and to that end in purpose, beg to state that whether those signatures appear separately or collectively on any papers, notes, checks, bonds or guarantee, that I stand ready to make good any losses that may be sustained now or at any time in the future." In addition to pledging her property, which this instrument recites was worth $50,000, it contained the representation as to her personal responsibility in the event that the real estate should not be sufficient to pay the loans "due or to become due," and, by way of a personal bond, that she was worth "at least the sum of two hundred and fifty thousand dollars in real estate wholly unencumbered and in stocks and bonds." This instrument contained a further recital as follows:

"This letter to cover any and all loans that may have been made or would be made to the firm of Irving K. Farrington & Co., provided the signatures of my sons heretofore mentioned appear upon same as additional guarantors, and of which said firm, my two sons are connected with, and financially interested in."

The plaintiff's son, Richard A., was a member of the firm of Irving K. Farrington & Co., who were stockbrokers conducting business in the city of New York. The appellant was a member of the defendant firm, and it does not definitely appear whether he was conducting business individually or only in connection with his firm. The business he was engaged in, however, whether individually or as a member of the firm, appears to have been the business of a private banker and broker. The plaintiff's note for $10,000, to which reference has been made, was procured at the suggestion of the appellant, from whom or whose firm the firm of Irving K. Farrington & Co. desired a further loan. In the interviews constituting the negotiations on that subject between the appellant and Farrington and Richard A. Fitzgibbon the appellant declined, according to his testimony, to make further advances to the firm of Irving K. Farrington & Co. on the ground that that firm was then indebted to him in about the sum of $40,000, and he claimed to have permitted the increase of the indebtedness to that amount largely on representations with respect to Richard's coming into a large amount of property in the future by inheritance. The plaintiff's note for $10,000 was made to the order of her son Richard, who indorsed it over to the appellant, who first deducted $50 for the discount and $400, $300 of which is said to have been charges for discounting the note, and the sum of $2,306 to pay checks of Irving K. Farrington & Co. held by him, and $3,553.42 being the amount of an indebtedness for which Irving K. Farrington & Co. had pledged stocks with the appellant or his firm, which stocks were then released and surrendered to Irving K. Farrington & Co., and gave the firm of Irving K. Farrington & Co. two checks aggregating the balance of $3,690.58. This application of the proceeds of the note was apparently satisfactory to the plaintiff's son and to his firm at that time; and a letter addressed to appellant by him with respect to the application of the proceeds of the note clearly shows that he did not expect to receive the entire proceeds in cash. Evidence was given tending to show that the appellant or his firm agreed, in addition to discounting the note, to advance the further sum of $10,000 to Irving K. Farrington & Co., provided the

plaintiff's note was obtained. This was controverted, but the court found that the agreement was made. There is no evidence, however, of any refusal on the part of the appellant or of his firm to advance further funds to the firm of Irving K. Farrington & Co. after the making and discount of the note or at the time thereof, or of any request or demand made of or on him or his firm so to do. There is no evidence, however, that the plaintiff had any information with respect to the agreement on the part of the appellant or of his firm to make any further advances to Irving K. Farrington & Co. if such an agreement was made, other than to discount the note, and the court so found.

It was entirely competent for the plaintiff to agree, as an inducement to appellant or his firm to discount her note for the benefit of her son or of his firm, to obligate herself to pay the existing indebtedness on the part of her son's firm to the appellant or to his firm; and, if she knew and understood the contents of the two instruments which she seeks to have canceled, by executing them she so undertook to obligate herself and to pledge the real estate in question therefor. The plaintiff had advanced to her son's firm at this time about $100,000. It may be that she would as a condition of raising about $10,000 cash for her son on her note secured by property worth about a quarter of a million dollars agree to become responsible for an existing indebtedness of his firm to appellant or to appellant's firm of $40,000, but no emergency requiring such an unbusinesslike transaction is presented by this record. There is no evidence that the appellant or his firm was pressing the payment of the existing obligations owing by the firm of Irving K. Farrington & Co. The execution of the note for $10,000 and of the two instruments which the plaintiff seeks to have canceled appears, according to the testimony of the appellant, to have been procured solely upon his agreement to buy the note for $10,000, and, according to the other testimony in the case on his agreement, not only to buy the note, but to advance the further sum of $10,000. It would seem that the sum of $10,000 or even $20,000 might have been readily obtained by mortgage on the plaintiff's real estate without obligating her to a liability beyond that amount. It is manifest, therefore, that the plaintiff did not act advisedly, and it may well be that she was imposed upon, and that a fraud was perpetrated upon her in inducing her to execute these papers, and it is not improbable, in view of evidence to the effect that her son Richard hesitated to go to his mother again, and of his own testimony by which he concedes that he obtained the execution of these papers by his mother without informing her of their contents or of the nature thereof, that he was a party to it, but the court has not so found. It is not probable, however, that he was imposed upon by the attorney for appellant as is indicated by a finding contained in the decision. He was a business man. He saw and examined the papers, and claims that he thought that one of them appeared to be a mortgage, and so stated to Newman, a member of the bar who had accompanied him to Cincinnati, Ohio, in the interests of the appellant, although at the expense of the firm of Irving K. Farrington & Co. to supervise the execution of the papers by the plaintiff, who came to the hotel where he was stopping at the instance of her son Richard for that purpose. According to his testimony, New-

man assured him that the instrument was not a mortgage, and he thereupon had his mother sign the note and the two letters without informing her of the contents otherwise than to say, "It is all right, Mother," or, "Everything is all right, Mother." According to his testimony, he told his mother in substance that he wanted to obtain a loan for $10,-000 from her, and that she would have to sign a note to enable him to do so; but, according to her testimony, he merely asked her to go to the hotel to sign some papers, and did not inform her and she did not inquire what they were, and all that she knew about them was that on signing them she observed that one was a note. The plaintiff's son Richard, according to his own testimony, failed to inform his mother that she was pledging her property, not only for the payment of the note, but for the payment of this large amount of existing indebtedness from his firm to the appellant or to the latter's firm. This in itself would have warranted a finding of fraud on his part, and the court has found that he was not his mother's agent. The evidence would have warranted a finding of fraud on the part of Newman also, for not only were the forms of the papers themselves such as to mislead the plaintiff, being in the form of letters, but there is evidence to the effect that Newman knew that the plaintiff did not read the papers, and that the contents thereof were not stated to her. Sufficient has been stated, however, to show that the judgment cannot be sustained on the facts as found, and therefore it must be reversed.

It follows, therefore, that the judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE and MILLER, JJ., concur.

INGRAHAM, P. J. I concur with Mr. Justice LAUGHLIN in the reversal of this judgment on the ground that there could be no cancellation of these agreements unless the fraud alleged in the complaint was proved, but I do not concur in his statement that the evidence was sufficient to justify a finding of fraud.

The agreements were executed to secure the indebtedness of the plaintiff's sons to the defendant. I think there was sufficient consideration in the discount by the defendant of the note given by the plaintiff at the time these instruments were executed and the subsequent extension of the payment of the indebtedness of plaintiff's sons to the defendant. The fraud to justify a cancellation of these agreements must be fraud of the defendant. The evidence is undisputed that no representations were made to the plaintiff by either the defendant or Newman, the lawyer who accompanied the plaintiff's sons, and was present when the instruments were executed. Plaintiff's son requested her to sign these instruments, assured her that they were all right, and she signed them without examination and relying upon her son's statements. We may assume that Newman was defendant's attorney, and that the defendant would have been responsible for any fraudulent misstatement that was made by Newman to the plaintiff or to her son by which plaintiff was induced to sign these instruments. The only statement that Newman made in relation to the instruments was made to the plaintiff's son in the absence of the plaintiff, and that was

as to his legal opinion of the effect of one of the instruments, Newman assuring the plaintiff's son that the instrument was not a mortgage. It did on its face, however, give to the defendant a lien upon the plaintiff's real property to the amount of the indebtedness, but. there is no evidence to show that either the plaintiff or her son did not intend to give the defendant such a lien. It was undoubtedly an improvident act for the plaintiff to sign such an instrument, but I do not think there was evidence to justify a finding that the signing of the instruments was induced by the fraud of either the defendant or his attorney, or that the court was justified in decreeing the cancellation of the instruments. Fraud must be proved. It cannot be presumed. Plaintiff's sons were in financial difficulties, and required additional assistance from the defendants. Plaintiff understood that she was procuring for her sons such assistance, and the mere fact that she did not know just the extent of the obligation which she assumed, or that she relied upon her son's representation that the instruments were all right, would not justify a finding that the defendant or his representatives were· guilty of fraud.

I concur therefore in the reversal of the judgment.

SCOTT, J., concurs.