JOHN SHAY, Plaintiff, *v.* SELINA ABDELLA and Another, Defendants.

Supreme Court, Clinton County, December 21, 1927.

**Fraudulent conveyances — action by judgment creditor to set aside — shortly before judgment was entered in favor of plaintiff against grantor, grantor conveyed property to daughter-in-law — daughter-in-law had lived with and worked for grantor for about twenty-five years without pay — evidence shows that grantor made conveyance in order to pay daughter-in-law for services — consideration was fair — conveyance will not be set aside.**

Plaintiff seeks to have set aside a conveyance of real property made by his judgment debtor, one of the defendants, on the ground that the same was made in fraud of the plaintiff, who recovered a judgment against said defendant a few days after the conveyance was made. The evidence does not establish that the conveyance was fraudulently made and it will not be set aside. It appears that the grantee, who is the daughter-in-law of the grantor, has lived with the grantor for about twenty-five years and has worked for her during all that time without receiving any compensation. The evidence is also clear to the effect that the purpose of the conveyance by the grantor, who at the time was in very feeble health, was to compensate the grantee for the services she had rendered, and for which she had not been paid, and that the conveyance was executed in compliance with a prior promise to pay the grantee.

The evidence tends to establish that the reasonable value of the grantee's services was approximately $15,600 and that the value of the property conveyed,

according to the plaintiff's evidence, was $13,600. Therefore, there was a fair consideration for the conveyance which was made in satisfaction of an honest debt.

An agreement made a short time after the conveyance, whereby the grantee agreed to care for the grantor, does not tend to prove that the deed was given for the purpose of hindering or delaying creditors.

ACTION to set aside a conveyance of real property.

*O'Connell Brothers,* for the plaintiff.

*Judge & Long,* for the defendants.

GOLDSMITH, J. This action is brought to set aside, as fraudulent, a deed executed and delivered by the defendant Selina Abdella to the defendant Delphine Cook on January 19, 1927. At the time of this transfer Mrs. Abdella was more than seventy-five years of age, a widow for the fifth time, and suffering from a sickness rendering her physically helpless. She had been in this condition of impaired health for nearly five years and spent all of her time either in bed or in a chair in a sitting room adjoining her bedroom and directly back of a grocery and provision store owned and conducted by her. Upon request of the plaintiff the court adjourned to her home in order to permit her testimony to be taken in this action. Her answers were elicited very slowly and with considerable discomfort to her but her mind was fairly clear as to the material statements of her testimony.

Mrs. Abdella had lived in the same location since 1894, when she purchased the property which was then an unimproved tract of fifteen acres of land, with the exception of a small blacksmith shop thereon, situated on the north side of Cornelia street on the outskirts of the city of Plattsburg. At the westerly end she erected the premises known as the Michigan Hotel, where she resided and which flourished with a questionable reputation until the adoption of National prohibition. To the east she constructed a large three-story building known as " The Store " and being the premises where she now resides. In addition three small dwellings and and five two-family houses were erected upon the property with a barn in the rear of each building. All of these structures remain in various stages of repair later to be more particularly described. Upon four acres of the land a quarry was opened and operated. In 1914 she purchased a tract of twenty-five acres of land on the opposite side of Cornelia street and this property remains unimproved. The foregoing premises constitute all of the real property that was formerly owned by Mrs. Abdella.

In 1891 the defendant Delphine Cook, then twenty-one years of age, came from Montreal to Plattsburg and entered the service

of Mrs. Abdella, then Douglas, and has remained ever since in the household, becoming her daughter-in-law in 1911. Delphine says that she never received any wages. The older woman permitted her to have the tips she received from patrons at the Michigan Hotel and occasionally gave her small sums of money and clothes. Delphine, from the time she entered the household until the present, performed varied duties with increasing responsibilities as the health of her mother-in-law failed. Delphine made the beds, cooked the meals, waited on table, went to market, kept the accounts, often chopped wood and worked outside, looked after the chickens and did the washing and ironing, while they lived at the Michigan Hotel and, after moving into the present quarters, performed all household duties, took care of her mother-in-law, and managed the store. Delphine was always asking the older woman for the money due her and she received frequent promises of payment but never any money. In 1911 Delphine married John Cook, the son of Mrs. Abdella by her first husband. Delphine's situation and duties were not altered by marriage, nor did they change after the death of John Cook in 1913. Her husband died seized of one of the small houses referred to that had been given to him by his mother, but he left no will and the mother again became the owner, subject to Delphine's dower interest. During her many years of service Delphine had been able to save about $800. In 1925 Mrs. Abdella decided to give Delphine a deed to the house and premises acquired from her son, and an attorney was engaged to carry out the transaction. Delphine voluntarily gave Mrs. Abdella $500 for the property, which was worth something in excess of this amount, and received the deed. At this time there was " a good deal of talk with reference to a lot of money that Mrs. Cook claimed Mrs. Abdella owed her for services and Mrs. Cook wanted other properties deeded to her or security given. Mrs. Delphine Cook talked quite at length and stated that for a great many years she had waited on Mrs. Abdella and looked after the store and worked about the house and had been promised pay but had received nothing, while large sums of money was furnished to Mrs. Abdella's husband to squander and she asked Mrs. Abdella to give her a deed of other properties or to make provision for her of some kind." Mrs. Abdella admitted the indebtedness and said that she would take care of it later, possibly by will. She then produced a will, but it contained no reference that the bequest to Mrs. Cook was for services and the attorney advised her to have it redrawn for such modification.

It appears that in 1923 and 1924 Mrs. Abdella mortgaged one

of the houses and the quarry lot heretofore described to the plaintiff as security for the payment of the sum of $5,400. On May 7, 1925, she borrowed from the plaintiff $500 upon a promissory note due three years after date. The mortgage loans were not paid when due, and in September, 1926, foreclosure actions were started by the plaintiff. The defendant did not appear, judgment went by default, and the first publication of notice of sale appeared on January 11, 1927. On January 19, 1927, Mrs. Abdella transferred by deed to Delphine all of her real property as described in the original conveyances to her, excepting the parcels mortgaged to the plaintiff. Delphine assumed the payment of certain mortgages covering the premises and " as a part of the consideration for the execution and delivery of the deed, the party of the second part [Delphine] does hereby agree to and does cancel all of her claims and demands for services rendered to party of the first part since the year 1891, and will make no further claim against the party of the first part herein for such services." This conveyance rendered Mrs. Abdella insolvent.

On January 26, 1927, a week after Mrs. Abdella had transferred her property to Delphine, the parties executed an agreement which recited that the conveyance had been made for the purpose of paying Delphine for her services and upon the understanding that Delphine would assume certain obligations and agree to support and care for Mrs. Abdella, and by this agreement Delphine formally released all her claims of every kind against Mrs. Abdella and agreed to support and care for her during the rest of her natural life. In respect to this agreement upon direct examination on behalf of the plaintiff, by whom she was called, Delphine testified that the property was not conveyed to her in return for a promise to care for Mrs. Abdella, although before the deed was drawn she offered to take care of Mrs. Abdella as long as she lived.

The premises mortgaged to the plaintiff were duly sold and, failing to bring an amount sufficient to cover the principal indebtedness, accrued interest and costs, deficiency judgments were entered against Mrs. Abdella for $3,097.71 and $2,337.80, totaling $5,435.51. The executions issued upon the judgments were returned unsatisfied by the sheriff and this action was commenced to set aside as fraudulent to creditors the conveyance from Mrs. Abdella to Delphine.

A transfer of property in satisfaction of a debt is not prohibited even though it result in a preference to one creditor over another. The transaction may only be questioned when it is tainted with fraud. (*Billings* v. *Russell*, 101 N. Y. 226, 229.) The fraud may be plain and apparent or it may be the reasonable inference from

the circumstances of the case. What constitutes fraud is a question of fact and not of law. (Real Prop. Law, § 265.)

The plaintiff challenges the validity of the debt and the fairness of the consideration and claims that Mrs. Abdella still retains the beneficial ownership of the property. He contends that these facts brand the transaction as a fraudulent scheme to divest herself of the title to her property and place it beyond the reach of the plaintiff, to whom she is justly indebted. (Debtor & Creditor Law, §§ 272, 273, 276.)

The transfer was made when it was apparent to the defendants that a judgment would soon be recovered by the plaintiff against Mrs. Abdella. This fact casts suspicion on the transaction but it is not controlling upon the good faith of the parties. (*Inglehart* v. *Thousand Island Hotel Co.*, 109 N. Y. 454, 464.) If Mrs. Abdella feared that the plaintiff would take all of her property in satisfaction of the deficiency judgments he was likely to recover and she was desirous of paying an honest debt owing to Delphine, she had a right to convey her property to Delphine, and this action does not constitute fraud even though it defeated the opportunity of plaintiff to collect his claim. (*Hyde* v. *Bloomingdale*, 23 Misc. 728, 729.) It was not fraudulent for her to try to protect Delphine, who had been in her household for over twenty-five years and had devoted the best years of her life to her service and care. She had a right to prefer her daughter-in-law if she were an honest creditor. Delphine says that she never was paid for her services, although Mrs. Abdella constantly promised to pay her in response to repeated demands for payment. Board and lodging, clothes and tips from the patrons of the Michigan Hotel, can scarcely be considered as adequate compensation for the laborious duties faithfully performed by Delphine since 1891. Mrs. Abdella always considered that she owed her a " lot of money," even though she was not quite certain as to the amount. In 1925, when the small house was transferred to Delphine, Mrs. Abdella, in the presence of a reputable attorney, admitted that she owed Delphine for her services and agreed to take care of the payment later. The deed to the small house was not in satisfaction of the debt. Delphine, had a dower interest in the house, and she paid $500 as the purchase price. Undoubtedly it was a good bargain for Delphine, although she probably felt that she was entitled to the premises since her husband owned the property and left her nothing when he died. The conversation at the time of the transfer refutes any intention of the parties to consider the conveyance of the house in satisfaction of the debt. It is true that Delphine was married to the son of Mrs. Abdella in 1911 and lived with him on the premises

until his death in 1913, but this relationship does not indicate that Mrs. Abdella did not intend to pay her for her services inasmuch as she continued to work exactly as before. Her marriage to Mrs. Abdella's son did not relieve the mother-in-law from paying for her services, considering that they were not the kind of services ordinarily rendered by a member of the family and were far in excess of the value of her board and lodging and clothes. There was some proof that Delphine had said that she received one dollar per week pay and the " old lady " would give her the store after she died. Delphine denies making this statement and it is scarcely to be reconciled with Mrs. Abdella's admission that she owed Delphine a " lot of money " or with the inadequacy of such compensation for the services rendered. I think the evidence is conclusive that Mrs. Abdella intended and promised to compensate Delphine for her services and that no payment therefor has ever been made. The value of such services is not easy to reach. Delphine had a book in which she kept an account of her services, although no value was placed upon them in this book, but she lost the book some years ago. She was a domestic, clerk, nurse and general handy woman. She says she expected to receive twenty-five dollars per week. Others have given the value of her services in 1891 as five dollars per week and in later years from ten dollars to twenty-five dollars per week. The worth of services of this character is hardly a question of expert opinion and must be based on the judgment of the average intelligent citizen and the court was liberal in the admission of evidence in this respect. It is undisputed that the value of wages has been in the ascendency since 1891. According to the proof they were worth at least five dollars per week for the first ten years, and ten dollars per week for the balance of the time. This is a very modest estimate of their value and would approximate fifteen thousand six hundred dollars.

Mrs. Abdella transferred all of her property to Delphine. Extensive proof was offered as to the value of the several parcels. The Michigan Hotel was in dilapidated condition on the date of conveyance, portions of it being unsafe for occupancy and only a few rooms being tenanted. The valuation placed upon the property by plaintiff's expert was $3,000. Some of the buildings were in good condition and occupied under fair rentals, while others were in need of considerable repairs. Taking the valuation placed upon the properties by plaintiff's witnesses, the aggregate was $16,250. There being mortgages covering several of the premises amounting to $3,650, the gross equity of Mrs. Abdella in the entire property upon the day of transfer, taking the plaintiff's figures,

was $12,600. This amount is less than Mrs. Abdella's indebtedness to Delphine, so the consideration for the transfer cannot be termed unfair. In fact there is much persuasive evidence in the case that substantially lowers plaintiff's valuation of the properties but no helpful purpose will be attained by pursuing this feature of the case further.

There still remains for consideration the charge that the transfer was a subterfuge and that Mrs. Abdella is actually the owner of the property although the title remains in Delphine. It is true that the two women continue to live on the store premises under the same conditions as previously, but what else could be expected of them? They have resided in the same household for over thirty-five years and, because Delphine has become the owner of the property through the payment of her debt, it does not follow that she should oust her mother-in-law. It would be surprising if she did not permit the " old lady " to remain with conditions unchanged and take such comfort as she could in her former home. For this reason, undoubtedly, Delphine continues to turn the rentals over to Mrs. Abdella. It was their way of doing things over many, many years and it is too late for them to change their manner of living and their method of conducting business affairs. None of these features of the case to my mind stamp the transfer with fraud or collusion. Some testimony was offered that after the transfer Delphine said, in substance, that she had to look out for the " old lady " or she wanted to save the property for the " old lady." These statements, if made, do not vitiate the transactions. Delphine's motive is of no moment, if she actually took title and assumed ownership in good faith for a fair consideration in satisfaction of an honest debt, as I have found. (*Jewett* v. *Noteware*, 30 Hun, 192.) The agreement executed on January 26, 1927, adds nothing to the claim of fraud. Delphine had told Mrs. Abdella that she would take care of her and undoubtedly the mother-in-law wanted the assurance of a writing to this effect. Upon direct examination by the plaintiff, by whom she was called, she, explained the provisions of the instrument, testifying that she offered to take care of Mrs. Abdella but that it was not part of the consideration of the transfer. While the execution of an instrument of this character raises a suspicion as to the good faith of the transfer, any inference suggesting an intention on the part of Mrs. Abdella to defraud, hinder or delay creditors was dispelled by the particular circumstances of this case, as heretofore related and explained. There is no proof of collusion between Delphine and Mrs. Abdella or no facts that suggest fraud that are not susceptible of explanation. I am satisfied that Delphine became the absolute

owner of the property conveyed in good faith and for a fair consideration and that no beneficial interest was retained therein by Mrs. Abdella.

The defendants should have judgment dismissing the complaint on the merits.

Submit findings.