ARCHIBALD S. KNIGHT and Another, Appellants, v. JOHN KITCHIN and Another, Respondents.

Fourth Department, January 17, 1933.

*Addis V. Adams* [*Henry R. Glynn* of counsel], for the appellants.

*Thomas L. Toan,* for the respondents.

EDGCOMB, J. A brief review of the facts leading up to the execution and delivery of the mortgage sought to be foreclosed in this action is necessary, because the defense centers about a certain agreement which was made by the plaintiffs and the defendant John Kitchin on April 11, 1931, prior to the execution of said mortgage and the accompanying bond.

In January, 1924, the plaintiffs in this action, George R. Van Alstyne and Archibald S. Knight, and the defendant John Kitchin became interested in a joint venture, the details of which are unimportant here, involving certain real property situated on the corner of Main street E and Culver road in the city of Rochester. This property was incumbered by several mortgages, three of which, aggregating $48,500, were held by Knight and Van Alstyne. An action was commenced to foreclose two of said mortgages, and it was sought to hold both Kitchin and his wife for any deficiency. A dispute arose not only as to the Kitchins' liability on said bonds and mortgages, but also as to the respective rights of the parties in the Main street property. Accordingly, the parties entered into negotiations looking toward a settlement of all matters of difference between them, and as a result the contract of April 11, 1931, was entered into.

This settlement agreement is divided into three separate parts. The first is devoted to the then pending foreclosure action, and contains the following provision: " That the said foreclosure actions shall be discontinued without costs to either party, and first party [Kitchin] and wife shall be released from personal liability on said bonds and mortgages. Upon execution of this agreement that first party [John Kitchin] shall make, execute and deliver to second parties [Knight and Van Alstyne], his bond secured by mortgage on his certain property on Winton Road North near Tryon Park,

the same being a vacant lot. Said bond and mortgage shall be for the sum of $1,000.00 plus any and all taxes now a lien upon said premises and payable one year from date with interest at the rate of 6% per annum." Then follows the provision as to how the proceeds of the mortgage should be applied. The second part of the agreement gives Mr. Kitchin an option, until May 1, 1931, to purchase the interest of Knight and Van Alstyne in the Main street-Culver road property for $48,500. The third section provides what shall be done in case Kitchin fails to exercise his option. In that event it is agreed that the parties will form a corporation to take over the real estate, and that Kitchin, who held the title to the property, would deed it to the corporation, and that Knight and Van Alstyne would discharge their mortgages, and in lieu thereof that the corporation would execute and deliver to Knight and Van Alstyne its bond, in the amount of $48,500, to be secured by a mortgage on said premises.

Plaintiffs seek in this action to foreclose the mortgage on the Winton road property, which was given pursuant to the settlement agreement of April 11, 1931.

The defendants admit that they executed the bond and mortgage in suit, but defend upon the theory that, as a condition precedent to or concurrent with the execution and delivery of said instruments, the plaintiffs were bound to deliver to the defendants a release discharging them from personal liability upon the Main street-Culver road mortgages which were being foreclosed at the time the settlement agreement was made, and that the plaintiffs have failed or refused to comply with said provision, and that the instant suit cannot be maintained until such condition has been fulfilled. Defendants further contend that the mortgage was not due at the time the action was commenced, because the provision requiring the interest to be paid every six months, and the clause making the whole of the principal due after default of interest for thirty days, were not made a part of the settlement agreement, and that, although such provisions are found in the bond and mortgage, they cannot be enforced. Upon the same theory Mrs. Kitchin asserts that she cannot be held for any deficiency judgment, because the settlement agreement only provided for her husband's bond and mortgage, and not hers, and that, as to her, the bond and mortgage in suit are without consideration.

Respondents' claims as thus outlined have found favor with the trial court, and the complaint has been dismissed. We think that the facts disclosed by the record require a different result.

The settlement agreement of April 11, 1931, releases Mr. Kitchin and his wife from all personal liability on the bonds and mortgages

on the Main street-Culver road property, without the execution of any further discharge. That is apparent from the very language of the instrument. It is provided that Kitchin and his wife " shall be released from personal liability on said bonds and mortgages." Defendants need no further assurance of their discharge from personal liability on said obligations. Nowhere in this agreement is anything said about the execution or delivery of any other or further release. The discharge of the mortgages mentioned in the third part of the contract must not be confused with the release of the Kitchins from personal liability on said bonds and mortgages. The two are entirely separate and distinct. The satisfaction of the bonds and mortgages was not to be made except in the event that Mr. Kitchin failed to exercise his option to purchase the property, and he had until May 1, 1931, to exercise that option. The execution of the mortgage in suit was to follow immediately upon the signing of the settlement agreement of April 11, 1931; it was not to be held up until the following May, pending Mr. Kitchin's decision as to the purchase of the Main street property. Besides, the plaintiffs were to discharge the mortgages, and in lieu thereof were to receive a mortgage for the aggregate amount of those which they had released, which was to be executed by a corporation which was not in existence when the bond and mortgage in suit were executed, but which was later to be organized, if Kitchin did not purchase the Main street property. Plaintiffs were not to give up their lien on this property unless they received the mortgage of the newly-formed corporation. The discharge of the mortgages on the Main street property had nothing to do with the execution of the mortgage in suit, and could not have been a condition precedent to or concurrent with its execution and delivery.

It follows, therefore, that there is no condition precedent to or concurrent with the execution and delivery of the bond and mortgage in suit with which the plaintiffs have failed to comply, or which will deprive them of their right to enforce the conditions of these instruments.

This brings us to the claim of the respondents that the mortgage was not due at the time this action was commenced, and that there is no consideration as to Mrs. Kitchin, and that no deficiency judgment can be entered against her.

As before noted, the settlement agreement was silent as to the date when the interest became due. All that was said upon this subject was that the principal should be payable " one year from date with interest at the rate of 6% per annum." When it came to draw the bond and mortgage, the provision was added that the interest should be payable semi-annually.

We think that the defendants are bound by the terms of the bond and mortgage which they signed.

There is no allegation in the answer of either defendant that they were induced to sign the bond and mortgage by fraud or duress; nor is there any finding to that effect, much less any evidence upon which such a finding could be made. It is claimed, however, and has been found by the trial court, that the defendants, in executing the bond and mortgage, acted under a mistake as to the legal effect of the instruments, and are, therefore, relieved from any obligation therein imposed which differed in any respect from those contained in the settlement agreement.

It is very true that the defendants are not bound to show fraud or intentional misstatements to entitle them to relief. This is an equity action. Equity will administer such relief as is required at the time of judgment, and, in a proper case, will set aside and avoid a transaction which has been induced by means of material misrepresentations or false statements, notwithstanding the fact that such statements were honestly made, and that there was no intent to deceive. (*Bloomquist* v. *Farson*, 222 N. Y. 375, 380; *Leary* v. *Geller*, 224 id. 56, 58; *Matter of Clark*, 233 App. Div. 487; *Commercial Credit Corp.* v. *Third & Lafayette Sts. Garage, Inc.*, 226 id. 235, 238; *Canadian Agency, Ltd.*, v. *Assets R. Co.*, 165 id. 96, 102; *Wood* v. *Dudley*, 188 id. 136, 140.)

The undisputed evidence shows that the bond and mortgage in suit were dictated by Mr. Van Alstyne in Kitchin's presence, and that Kitchin took both documents away with him, and kept them over night, and that they were delivered to the plaintiffs the following day, properly executed by both Kitchin and his wife. Kitchin had been engaged in the real estate business for upwards of twenty years, and had made numerous loans on real property, and had executed many mortgages. He was no novice. He was familiar with transactions of this character, and knew full well the purport and legal effect of the instruments which he and his wife signed on this occasion. He had ample opportunity to read and study them. If he desired to counsel with an attorney, there was nothing to prevent his so doing. No deception was practiced upon the defendants, and they were under no restraint or coercion when they signed these instruments. Plaintiffs were not present at that time. No one stood over defendants' shoulders, and told them what to do. If they did not know what they were signing, it was their fault.

Defendants do not say whether they read the bond and mortgage or not. No reason is suggested why they did not do so, nor why

they did not understand the contents if they did read the instruments. The language used is simple; it is not confusing. Kitchin was familiar with documents of this character.

Ordinarily one is bound by an instrument which he signs, and it matters not that his mind never gave assent to the terms therein expressed. If he can read, not to have read the paper is gross negligence. If he is unable to read it, it is equally negligent not to have procured it to have been read to him. In either case the writing binds him. (*Pimpinello* v. *Swift & Co.*, 253 N. Y. 159, 162, 163; *Metzger* v. *Ætna Ins. Co.*, 227 id. 411, 415, 416; *Johnson* v. *Star Permanent Wave Corp.*, 237 App. Div. ——.)

Where a party, previous to executing a written agreement, has full opportunity to examine it and ascertain its contents, and voluntarily signs the document without making such examination, he cannot claim a reformation of the agreement simply on evidence that it contains obligations which he was unaware of, and did not intend to agree to; there must be clear evidence of fraud or of a mutual mistake to authorize a reformation. (*Moran* v. *McLarty*, 75 N. Y. 25, 29; *Fitz-Gibbon* v. *Parker*, 143 App. Div. 463.) Concededly, there was no mutual mistake here, nor was there any fraud which induced the defendants to sign these instruments.

The mere fact that the parties had been associated together in a joint venture, or that Mr. Van Alstyne was a lawyer, and drew the bond and mortgage gratuitously, is not in itself sufficient to establish a fiduciary relation so as to raise a presumption of fraud or undue influence. (*Stout* v. *Smith*, 98 N. Y. 25.)

Neither do we think that any unfavorable inference can be drawn against the plaintiffs because they failed to present the bond and mortgage to Mr. Van Schaick, who appeared for the Kitchins in the foreclosure action, for his approval as to form.

It is rather difficult to believe that Kitchin, when he signed the bond and mortgage, acted under any mistake as to their legal effect. The fact that these instruments called for the payment of interest every six months seems to have been impressed upon his mind, although such a provision is not contained in the settlement agreement, with which he claims to have been very familiar, because he went to Van Alstyne's office in November, 1931, for the very purpose of paying the interest which fell due on the eleventh of the previous month. Had Kitchin actually been ignorant of the date when this interest became due, or had he acted under a mistaken notion as to the legal effect of the bond and mortgage, it is unlikely that he would have been on hand with the money to pay the interest before April 14, 1932, the day on which the principal became due.

I fail to see how it can be said that the parties have changed the

provisions of the settlement agreement by inserting in the bond and mortgage the provision that the interest should be payable semi-annually. I cannot believe that it was ever contemplated by the parties that the interest should not become due until the principal was payable. If we were to give the liberal interpretation to the language of this provision which is contended for by respondents, and the mortgage ran for five years instead of one, the interest would not become due until the expiration of five years. The provision in the bond and mortgage only made definite and fixed that which was left uncertain in the settlement agreement. Under such circumstances, for the parties to agree in the bond and mortgage to a definite day on which the interest became due was not a contradiction of the terms of the prior agreement. (*Lawrence* v. *Miller*, 86 N. Y. 131, 139.)

But if it should be held that the provisions in the bond and mortgage relating to the date when the interest became due was in reality a contradiction of the terms agreed upon by the parties, as expressed in the agreement of April 11, 1931, the proof shows that the settlement agreement was modified by mutual consent of all parties.

Undoubtedly Kitchin had a right to stand upon the settlement agreement, and to insist that the bond and mortgage which he was to sign should be drawn in strict conformity with the terms of that agreement. But it is fundamental that either party to a contract is at liberty to waive any of its provisions which are made for his benefit. Parties to an executory contract may, by mutual consent, change the agreement, provided of course, that there is a consideration for the new agreement and that the modification does not make it illegal or violative of public policy.

" Those who make a contract, may unmake it. * * * Whenever two men contract, no limitation self-imposed can destroy their power to contract again." (*Beatty* v. *Guggenheim Exploration Co.*, 225 N. Y. 380, 387, 388.)

We need not consider whether a covenant under seal can be modified or discharged by a parol unexecuted agreement. The ancient rule of the common law that an executory contract under seal cannot be altered or discharged except by an agreement in as high a form as the old has been criticised and questioned in *Harris* v. *Shorall* (230 N. Y. 343), where it was said that this technical rule had caused much inconvenience and injustice, and that it has practically been superseded as a result of the right given by modern rules of practice to interpose equitable defenses in legal actions, and that the time to effectively dispose of the rule, if not now, is near at hand. The rule, if still in force, has not been violated here,

because the bond and mortgage is under seal as well as the settlement agreement, and one is in as high a form as the other.

The modified contract, if in reality it be such, cannot be avoided for want of consideration.

The presence of the seal on the bond and mortgage imports the existence of a good consideration for all the promises therein contained. (*Vulcan Iron Works* v. *Pittsburg-Eastern Co.*, 144 App. Div. 827, 829; *Howie* v. *Kasnowitz*, 83 id. 295; *Rothschild* v. *Frank*, 14 id. 399, 403; Civ. Prac. Act, § 342.)

The absence of consideration is an affirmative defense which must be pleaded and proven. (*Howie* v. *Kasnowitz*, 83 App. Div. 295, 296.)

There is no allegation in defendants' answer of want of consideration for this new contract, if it be considered one, nor is there any proof of failure of consideration. On the contrary, the bond and mortgage were executed in settlement of the foreclosure actions on the Main street-Culver road property, and that fact alone would furnish sufficient evidence of a consideration to uphold the instruments. (*Hazleton* v. *Webster*, 20 App. Div. 177, 187; affd., 161 N. Y. 628; *Rector, etc.,* v. *Teed*, 120 id. 583, 587; *Dunham* v. *Griswold*, 100 id. 224, 226; *Sears* v. *Grand Lodge A. O. U. W.*, 163 id. 374, 379.)

We have reached the conclusion, therefore, that the provision in the bond and mortgage making the interest payable semi-annually is a valid and enforcible one. That being so, the mortgage was due at the time of the commencement of this action by reason of the acceleration clause, and the action was not prematurely brought, as held by the trial court, and the judgment must be reversed.

As to Mrs. Kitchin, we think that she is liable upon her bond. She did not take the witness stand, and there is no evidence from which it can be said that she was unaware of the contents of the instruments which she voluntarily signed, or that in executing them she acted under any mistake as to their purport or meaning. She cannot avoid the effect of her promise upon the facts presented in this record. The seal on the instruments purports a consideration for her agreement, notwithstanding the fact that nothing was said in the settlement agreement about her signing either instrument.

Furthermore, the evidence warrants a finding that Mr. Knight refused to advance the amount of the mortgage unless Mrs. Kitchin signed the bond, and that her husband, upon being informed of that fact, agreed that she would do so, and that she ratified that promise by executing both instruments. As we view the evidence, there is ample authority to hold Mrs. Kitchin to her agreement.

Certain findings are disapproved and new findings are made, and

the matter is remitted to the Special Term for the computation of the amount due on the bond and mortgage, and the additional and formal proof necessary to warrant a judgment of foreclosure and sale.

All concur.

Judgment reversed on the law and facts, with costs, and judgment granted in favor of the plaintiffs upon the issues raised by the answer, and matter remitted to the Special Term for the entry of judgment of foreclosure and sale. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.