In the Matter of the Estate of AURY J. DECKER, Deceased.

Surrogate's Court, Chenango County, November 6, 1933.

*H. C. & V. D. Stratton,* for the administrator *de bonis non* and another.

*Homer D. Owens,* for Oscar F. Decker.

*Edwin F. Verreau,* for Howard A. Decker.

*Becker, Jackson & Farrone,* for J. W. Van Cott & Son, Inc.

BROWN, S. This proceeding has been instituted by the administrator *de bonis non* of the estate of Aury J. Decker for the judicial settlement of his accounts and for leave to sell real estate of the decedent for the payment of his debts and funeral expenses. The decedent died December 7, 1931. The petition and account in this proceeding were filed November 15, 1932. At the time of the commencement of this proceeding an action was pending in the County Court of Chenango county brought by one Oscar F. Decker against the former administrator of the goods, chattels and credits of Aury J. Decker, the decedent, and others, for the foreclosure of a mortgage. In the present proceedings the parties by their respective attorneys stipulated that the issues raised by the answers in the foreclosure action be heard and determined in this proceeding and that the premises owned by the decedent at the time of his death, and upon which the mortgage is claimed to be a lien, be sold by the administrator in this proceeding and the proceeds thereof be deposited by the administrator in a bank to the credit of the estate and that the lien of the mortgage, if found by this court to be a just and valid lien, attach to the proceeds of the sale of the property and that certain mechanics' liens filed also attach to such proceeds and that the priority thereof be determined by the court.

The action pending in County Court is for the foreclosure of a mortgage alleged in the complaint to have been executed by the decedent on the 7th day of October, 1930, to secure the payment of the sum of $2,500, the amount of the alleged indebtedness of the decedent evidenced by a bond executed on the same date. The mortgage was recorded in the clerk's office of Chenango county on November 18, 1930, and it is alleged that the interest, which became due October 7, 1931, is in default.

The following mechanics' liens have been filed against the property covered by the mortgage, viz.:

J. W. Van Cott & Sons, Inc., for materials furnished between September 3, 1931, and December 4, 1931, in the amount of $1,002.75 (this is the amount set forth in the answer; the amount given

in the notice of lien as filed is $1,102.75); notice of this lien filed December 20, 1931.

Charles Van Why, for labor and services rendered prior to December 7, 1931 in the amount of $345; notice of lien filed January 2, 1932.

W. H. Clinton, for labor performed prior to December 7, 1931, in the amount of $109.50; notice of lien filed February 1, 1932.

In the foreclosure action the administrator *de bonis non* interposed an answer denying the material allegations of the complaint and alleging that the bond and mortgage in question were executed and delivered without consideration and for the purpose of hindering, delaying and defrauding the creditors. The answers of the lienors, J. W. Van Cott & Sons, Inc., and Charles Van Why, contained denials of the material allegations of the complaint and alleged that the bond and mortgage were given without a valuable consideration.

The real issue in this proceeding is the validity of the bond and mortgage in question. The evidence shows that the instruments were prepared by the decedent's attorney, H. William Smith, of Deposit, N. Y., following instructions from the decedent, and were by Mr. Smith delivered to Oscar Decker, the mortgagee, and later, at his request, mailed to the county clerk of Chenango county to be recorded. The administrator *de bonis non* and the lienors urge that no consideration for the execution and delivery of the bond and mortgage is shown in the evidence presented. The instruments are under seal. This is presumptive evidence of a consideration. While a seal on an instrument has, in later years, lost much of the former impressiveness given it under the common law (*Harris* v. *Shorall*, 230 N. Y. 343; *Alexander* v. *Equitable Life Assurance Society*, 233 id. 301), by statutory regulation, its presence on an executory instrument is still presumptive evidence of a sufficient consideration. (Civ. Prac. Act, § 342.) In *Knight* v. *Kitchin* (237 App. Div. 506), speaking of a bond and mortgage under seal, the court says: " The presence of the seal on the bond and mortgage imports the existence of a good consideration for all of the promises therein contained." On executed contracts the presence of the seal is still conclusive evidence of consideration. (*Baird* v. *Baird*, 81 Hun, 300; affd., 145 N. Y. 659; *Hull* v. *Hull*, 172 App. Div. 287; *Hogan* v. *Producers' Development Co.*, 200 id. 29.) The mortgage was an executory and not an executed contract. (*Baird* v. *Baird, supra.*) " An executory contract is one that has not been performed, or, in other words, where there yet remains an outstanding obligation, while an executed contract, so called, is one that has been fully performed, and this term is

often used as including an agreement where everything is completed, at the time without any outstanding obligation." (1 Elliott Cont. § 15.)

To rebut the presumption arising from the presence of the seal on the mortgage, the administrator *de bonis non* and the lienors offered proof of the financial condition of Oscar Decker, the mortgagee, and seek to draw an inference, from such financial condition, that it was wholly improbable that the decedent was indebted to his brother in the amount stated in the mortgage. In my opinion, the inferences to be drawn from such rebuttal evidence are not sufficient to overcome the presumption of a valuable consideration for the mortgage in question. Neither does it support the contention that the mortgage was fraudulently made and executed for the purpose of hindering, delaying and defrauding creditors of the decedent. Mere suspicion regarding a transaction is not controlling upon the good faith of the parties. (*Shay* v. *Abdella*, 131 Misc. 175.)

The administrator *de bonis non* and the lienors contend that the execution of the mortgage on the part of the decedent was a fraudulent act and the same should not be allowed to stand, and rely upon sections 270–276 of the Debtor and Creditor Law. Section 270 of that statute includes mortgages in the definition of a " conveyance." Insolvency is defined in section 271 as " 1. A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." Section 272 defines " fair consideration " as follows: " Fair consideration is given for property or obligation, a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained." In section 273 it is provided that " Every conveyance made and every obligation incurred by a person *who is or will be thereby rendered insolvent* is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." (Italics mine.) Section 276 deals with instances where conveyances are made with actual intent as distinguished from intent presumed in law.

The mortgage in question was executed October 7, 1930, or fourteen months prior to the death of the mortgagor. There is no proof that, at the time of the execution of this mortgage, the

decedent was not solvent. Neither is there any proof that the execution and delivery of such mortgage caused insolvency on his part as to any of his creditors. · In fact, the evidence does not show that he owed any indebtedness at the time of the execution of the mortgage other than such as that instrument evidenced excepting a prior mortgage, which later was satisfied from the proceeds of insurance received on property burned. It is not shown that he was indebted to any person at the time of the execution of the mortgage other than the mortgagees referred to. Insolvency will not be presumed but must be established by proof. (*Kain* v. *Larkin*, 131 N. Y. 300, 307.)

The claim of the lienor, J. W. Van Cott & Son, Inc., was incurred between September 3, 1931, and December 4, 1931, and did not have its inception until some eleven months subsequent to the date of the execution of the mortgage. The evidence does not disclose the beginning of the period during which Charles Van Why or W. H. Clinton, the two other lienors, performed services on which their respective notices of lien are based. From the date of the filing of the notices of lien, it is apparent that their claims did not accrue until several months subsequent to the giving of the mortgage in question. The materials furnished and the labor performed were in the construction of a house upon the premises to take the place of one burned some time in June, 1931, or some eight months after the mortgage was executed and delivered. At the time of furnishing the materials and the performing of labor, the claimants had notice of the mortgage as a lien upon the real property of the decedent, for it was recorded in the clerk's office of the county of Chenango, the county in which the property is located, November 18, 1930. They were not misled in any way by any act of the decedent as to his financial condition. It is difficult to conceive that the decedent could have had any intention of defrauding his creditors when it was not expected that the indebtedness represented by the notices of lien would be incurred, for, at the time of the execution of the mortgage, the house which later burned stood upon the property and was a part of the same, and there is nothing in the evidence to show that the decedent contemplated incurring the indebtedness later incurred.

The only suggestion of any existing indebtedness of the decedent at the time of the execution of the mortgage and delivery of same to his brother, with the exception of the prior mortgage on the property, is a pretended claim in favor of one Lola Clark, who formerly was in the employ of the decedent. However, there is no proof in the case that this pretended claim had any validity whatever or ever existed, in fact, and there is no evidence that

she presented any claim for services in the lifetime of the decedent or that he had any knowledge that she claimed he was indebted to her. There was some evidence indicating that she had a dispute with the decedent concerning the ownership of an automobile, which matter, however, was settled between them prior to his death. During the administration of the estate she presented a claim for services rendered. The account shows that this claim was rejected and, while she was a witness on the hearing in this case for the administrator, no mention was made of her claim against the estate and no proof offered to substantiate the same and she has made no effort to establish its validity and apparently has waived any right to payment of the same.

Fraudulent intent will not be predicated on an assumption that a conveyance was made for the purpose of defrauding a creditor who presents a claim against the estate of decedent where there is no evidence that the claimant ever presented her claim to the decedent in his lifetime or asserted the existence of it and no proof that such claim had any foundation in fact. The question of fraudulent intent here is a question of fact and not of law. (Real Prop. Law, § 265; *Woodworth* v. *Sweet*, 51 N. Y. 8; *Wheeler* v. *Lewis*, 203 App. Div. 222.) Fraud must be proved and not assumed and there must be evidence of fraud to justify a finding of its existence. (*Barr* v. *Sofranski*, 130 App. Div. 783.) To raise a presumption of fraud there must be existing creditors at the time of the conveyance claimed to have been made without consideration. (*Termini* v. *Huth*, 191 App. Div. 218; *Shay* v. *Abdella, supra.*) There is at present a conflict between section 265 of the Real Property Law and the Debtor and Creditor Law, but the latter, being the later declaration, doubtless controls. (*Berlenbach* v. *Bischoff*, 137 Misc. 719.) This act is merely declaratory of the former law. (*Schaeffer* v. *Fisher*, 137 Misc. 420, 423.) The burden of showing the conveyance to have been executed in fraud of creditors is on those asserting the fraud. (*Woodworth* v. *Sweet, supra; Kain* v. *Larkin, supra.*) Referring to section 276 of the Debtor and Creditor Law, the court, in *American S. S. Co.* v. *Wickwire Spencer Steel Co.* (42 F. [2d] 886), says: " Under this act, there is involved a rule of evidence and of law modifying the prior rule relating to imputable fraud, as distinguished from presumptive fraud, and it clearly puts upon the creditors the burden of proving that the conveyance or agreement was in fact actually tainted."

If the execution and delivery of the mortgage did not render the decedent insolvent at the time it was given and it was not a fraudulent conveyance when made, it did not become fraudulent

by retroaction when, at a future time, debts were incurred. (*American Surety Co.* v. *Conner*, 251 N. Y. 1; *Phillips* v. *Wooster*, 36 id. 412; *Cohen* v. *Hodes*, 54 F. [2d] 680.)

I do not understand that the provisions of the Debtor and Creditor Law have worked any change in the rule that a person who is solvent may convey his property or make a gift of the same when such conveyance or gift does not have the effect of causing his insolvency. In *Matter of Vitelli* (146 Misc. 17, at p. 18) it is said: " It is one of the most primary principles of property law that an owner thereof is entirely at liberty to dispose of any part or all of his possessions, either gratuitously or otherwise, at a time when he is not obligated to another and any such transfer is not subject to question from any source." ( *Kain* v. *Larkin, supra; Curtis* v. *Fox,* 47 N. Y. 299; *Dunlap* v. *Hawkins,* 59 id. 342.)

On the trial the plaintiff in the foreclosure action called as a witness the attorney who prepared the bond and mortgage, and he was permitted to testify, under objection and subject to a motion to strike out, which was subsequently made, to a conversation had with the decedent at the time of the preparation of the mortgage. The testimony of the attorney related to statements made by the decedent concerning an indebtedness to his brother and was offered for the purpose of showing a consideration for the mortgage. The witness had previously acted as attorney for the decedent and was acting in that capacity in the preparation of the instrument in question. The attorney for the plaintiff relies, among others, upon *Hebbard* v. *Haughian* (70 N. Y. 54); *Hurlburt* v. *Hurlburt* (128 id. 420, 424); *Rosseau* v. *Bleau* (131 id. 177, 183); *Doheny* v. *Lacy* (168 id. 213) and *Wallace* v. *Wallace* (216 id. 28) as authority for the competency of the attorney to testify to the communications of his client. In *Hebbard* v. *Haughian* (*supra*) it appeared that the facts testified to by the attorney were within his own knowledge, acquired in the transaction of business between the parties and were not communicated to him as an attorney to enable him to perform his duties to a client. In *Hurlburt* v. *Hurlburt* (*supra*), *Doheny* v. *Lacy* (*supra*) and *Wallace* v. *Wallace* (*supra*) it appeared that the communications concerning which the attorney was permitted to testify were made to the attorney in the presence of both of the interested parties. In *Rosseau* v. *Bleau* (*supra*) the question arose as to competency of an attorney to testify as to the delivery of a deed to him for the purpose of delivering it to another. In the other cases cited it appeared that both interested parties or a third party were present at the time of the communications sought to be proved. In the present case the conversation was had between the attorney and his client in the privacy of the

former's office and it does not appear that any other person was present and, while the statements testified to as having been made by the decedent were not necessary to enable the attorney to prepare the bond and mortgage, they bore directly upon the question of the consideration for giving the conveyance. It was information obtained by the attorney during the course of his employment in this particular matter and connected solely with the transaction involving the preparation of the instrument. The disclosing of such communications comes within the prohibition of section 353 of the Civil Practice Act. (*Williams* v. *Fitch*, 18 N. Y. 546, 551; *Bacon* v. *Frisbie*, 80 id. 394; *Root* v. *Wright*, 84 id. 72; *Yates* v. *Olmstead*, 56 id. 632; *People* v. *Alfani*, 227 id. 334, 340.)

The motion to strike out the evidence of H. William Smith, as to communications of his client made at the time of the preparation of the mortgage and received under objection, decision thereon being reserved, is granted.

I have reached the conclusion that the mortgage executed by the decedent to Oscar Decker on the 7th day of October, 1930, is a valid instrument and a first lien upon the premises therein described and that the liens acquired by those furnishing material and performing labor are subordinate to the lien of the mortgage and, under the stipulation entered into on the hearing in this proceeding, such validity and priority apply to the proceeds of any sale of the real property made by the administrator *de bonis non*.

An order may be entered in accordance with the foregoing.